Loerlein Unemployment Compensation Case.

Duquesne Brewing Company of Pittsburgh, Appellant, v. Unemployment Compensation Board of Review.

Argued November 17, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*Meade J. Mulvihill,* with him *Robert J. Grier, 2nd, L. P. Monahan, Clyde H. Slease* and *Mulvihill, Gollmar, Herron & Grier,* for appellants.

*Richard H. Wagner,* with him *T. McKeen Chidsey,* Attorney General, *R. Carlyle Fee,* Assistant Special Deputy Attorney General and *Roland M. Morgan,* for appellee.

OPINION BY HIRT, J., January 8, 1948:

These appeals, which as test cases will govern a number of other claims for unemployment compensation, raise a single legal question on facts which are identical in material respects. The referee modified the decision of the bureau in claimants' favor, on a finding that these claimants had voluntarily left their work without good cause and accordingly were ineligible for compensation under §402(b) of the amendment of the

Unemployment Compensation Law of May 29, 1945, P. L. 1145, 43 PS 802. The Unemployment Compensation Board of Review, on appeal, however, concluded that claimants' absence from work was the result of an industrial dispute. On that finding the decision of the referee was reversed and claim credits for benefits were allowed subject to the disqualification period under §402(d) of the above act. A recital of the undisputed facts will demonstrate that the referee was right in refusing all benefits in these cases. The orders of the Board will be reversed.

For some years the breweries in the Pittsburgh area were parties to a closed-shop labor agreement with the Executive Board of Local No. 144 and two other local unions, affiliates of International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America. The agreements governed the terms of employment of workers in the bottling departments of the breweries and were in full force and effect during the period involved in this appeal, and would not expire thereafter until April 1, 1947. At the time these agreements were entered into, the International Union was independent and was not associated either with the American Federation of Labor or the Congress of Industrial Organizations. Claimants were members of Local No. 144. In July 1946 a majority of the entire membership of the International Union voted to affiliate with the Congress of Industrial Organizations. As a protest against the referendum which resulted in affiliation with the C. I. O., claimants, with other former members of Local No. 144, joined a new Local Union No. 232 affiliated with the Teamsters Union of the A. F. of L. Claimant, Peter Loerlein, became president of the new local union and Patsey Stella was a provisional member. Early in October 1946 the executive committee of Local 232 ordered its members to stop work. Picket lines were then established by this local at the plants of appellants and were

maintained until April 2, 1947 when the strike ended, by agreement between the appellants and the joint council of the Teamsters Unions, which included Local 232, A. F. of L. Stella did not work after October 7, 1946; Loerlein left the employ of Duquesne Brewing Company on October 10, 1946 and did not work thereafter. From the testimony in these cases it is clear, as the Board of Review found, "that the work stoppage by members of Local Union No. 144 of the International Union, who were also members of Local No. 232 of the Teamsters Union, was part of an effort to give effect to their unit determination to affiliate with the American Federation of Labor and to avoid the effect of the referendum by which the International Union determined to affiliate with the Congress of Industrial Organizations". The strike was in no sense against the appellant employers. The workmen who participated in the work stoppage had no grievances against the breweries as to working hours, rate of pay or other conditions of their employment. The sole purpose of the strike was to compel the appellants and other breweries in the Pittsburgh area to recognize the Teamsters Union No. 232 of the A. F. of L. as the authoritative bargaining agency for the employees in their bottling departments, instead of a certified union affiliate of the C. I. O. In this situation appellants were hurt, but they were not in position to do anything about it; they were under contract with an established C. I. O. bargaining agent which precluded any negotiations by them with the striking A. F. of L. affiliates. In this contest the aggressors sought to recoup a part of their loss of earnings in the form of unemployment compensation benefits from contributions of former employers who were in no sense parties to the controversy.

Claimants unemployment was voluntary, but the testimony is wholly insufficient to support the finding of the Board that their suspension of work resulted from

an industrial dispute. This was exclusively a jurisdictional contest for labor control in which an A. F. of L. union attempted to raid the C. I. O. in a vain effort to attain recognition as the bargaining agent of employees in the bottling departments of the breweries. To amount to an industrial dispute a controversy need not necessarily be between employer and employees. "It may be between the employees and their Union or bargaining agency, *provided it involves the employer and affects the terms or conditions of employment*": *Miller v. Unemp. Comp. Board,* 152 Pa. Superior Ct. 315, 31 A. 2d 740. Cf. *Dorrington et al. v. Manning et al.,* 135 Pa. Superior Ct. 194, 205, 4 A. 2d 886. In the instant cases the controversy had nothing to do with the relationship between employers and employees, as to terms or conditions of employment, and therefore did not present a single aspect of an industrial dispute. Claimants clearly are not entitled to compensation under §402(d) of the Act.

It is equally clear, under the facts of these cases that claimants are barred under §402(b) of the Act because their voluntary unemployment was without good cause. Section 3 of Article I of the Act of December 5, 1936, P. L. [1937] 2897, 43 PS 752, which has never been changed by amendment or otherwise, "constitutes a Declaration of Public Policy with respect to the aims and purposes of the legislature in establishing a system of unemployment compensation. It is not a mere preamble to the statute, but a constituent part of it and is to be considered in construing or interpreting it . . . And the basic principle at the root of the Act, justifying the exercise of the police powers of the Commonwealth in its enactment, is that the reserves thus set aside from the enforced contributions of employers are to be used for the benefit of persons *unemployed through no fault of their own*": KELLER, P. J., in *Dept. L. & I., etc., v. Unemplmnt. Comp. Bd.,* 148 Pa. Superior Ct. 246, 24 A. 2d 667.

What is "good cause", of course, must be determined in the light of the facts of each particular case but a cause to be good in the sense of §402(b), must be " 'real not imaginary, substantial not trifling, reasonable not whimsical, circumstances [which] *compel* the decision to leave employment' ": *Barclay White Co. v. Unemp-Comp. Bd.*, 356 Pa. 43, 50 A. 2d 336, quoting from the opinion of Judge RENO in *Sturdevant Unemployment Comp. Case*, 158 Pa. Superior Ct. 548, 557, 45 A. 2d 898. Cf. *Baigis Unemp. Compensation Case*, 160 Pa. Superior Ct. 379, 51 A. 2d 518. No "outward pressures" compelled the stoppage of work in these cases. And even though the strike was ordered by claimants' Local 232, their participation in it must nevertheless be regarded as voluntary. "It would do great violence to the clear and unequivocal wording of the statute to hold that a labor or any other organization can control payments of unemployment benefits to its members by merely forbidding them to work at wages less than those set by it, or with certain persons, or at certain places, or *under certain conditions*": *Barclacy White Co. v. Unemp. Comp. Bd.*, supra. Claimants were members of Local 144 when it became a party to the existing agreements with their employers. That local then was claimants' agent and the agreements entered into by it on behalf of its members became claimants' contract and was binding upon them. Claimants' voluntary unemployment, which resulted in a violation of an existing contract made on their behalf, offended against the declared public policy of the Act and was without "good cause". One who voluntarily leaves his work in violation of an existing contract between his duly certified union and his employer is not within the coverage of the unemployment compensation law.

Decision reversed.