## Miller, Appellant, *v.* Johnstown Traction Company.

Argued April 17, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Samuel R. DiFrancesco,* for appellant.

*H. C. McWilliams, Jr.,* with him *Philip N. Shettig, McWilliams & Margolis* and *Shettig & Swope,* for appellee.

OPINION BY RENO, J., July 20, 1950:

On December 17, 1946, Johnstown Traction Company, hereafter called the company, appellee, executed a written contract with Division 1279 of the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America, hereafter called the union, of which appellant was a member. The contract, printed in a small pamphlet of 30 pages, covers the rates of wages, hours of employment, seniority rights, promotions, vacations, leaves of absences, pensions, and many other rules and conditions of employment. It became effective as of July 14, 1946; was to continue in force until July 13, 1947; and thereafter to "remain in effect from year to year unless *changed* as herein provided." (Emphasis added.)

Provision was made for arbitration "should any questions arise between them [the company and union] which cannot be mutually adjusted", and the method of selecting arbitrators was provided. *Changes* in the contract were also to be submitted to arbitrators under section 48, the second paragraph of which is printed in the margin.[1] The present controversy revolves around

---

[1] "Either party desiring to negotiate any *change* in this agreement, either at the end of the initial term or any extension thereof, shall give notice to that effect to the other party in writing, at least thirty (30) days prior to the expiration of the initial term or any extension thereof. In the event that the parties cannot reach an agreement on the proposed changes, then such changes shall be arbitrated as provided in Section 5 of this agreement, pending which this agreement shall remain in effect. It is further agreed that, if any negotiations or arbitrations continue beyond the date of the expiration of this agreement, or any extension thereof, then any *changes* which may be agreed upon shall be retroactive to the date upon

the concluding sentence, providing that "any changes . . . shall be retroactive to the date upon which this agreement, or any extension, was originally scheduled to expire."

A dispute arose between the company and the union concerning the wage scale and other conditions of employment. In a formal written statement the union requested "that the provisions of the existing agreement be modified and changed", enumerating them by reference to the numbered sections of the contract and setting out the proposed changes, including section 42 which contained the wage scale. The company in a similar document proposed that a number of specified sections of the agreement "be modified and changed", including section 48, concerning which the request was: "Eliminate the last sentence of the second paragraph and provide that any changes made in the agreement shall become effective on the date of agreement."

The company and the union were unable to agree upon the proposed changes of the contract, and the questions raised by the proposals were submitted to arbitration as provided for in the contract. On August 25, 1948, the arbitrators [2] filed a decision in which they denied many of the requests. However, they allowed an increase of wages at the rate of ten cents an hour for operators, and provided that the retroactive pay of all employes shall be paid on stated dates during 1948. By a supplemental award made the same day they provided: "All retroactive wage payments shall be made only to those employees who have been on the company's payroll as of

which this agreement, or any extension, was originally scheduled to expire." (Emphasis added.)

[2] Arbitrators: Hon. A. A. NELSON, Judge of the Orphans' Court of Cambria County, impartial chairman; H. Herbert Syme, representative of the union; George D. Gartland, representative of the company.

August 25, 1948." The arbitration award was accepted by both parties.

Plaintiff was a bus operator for the company from 1939 to April 25, 1948, when he terminated his employment. Contending that the part of the arbitrators' decision which confined retroactive wage increases to employes on the payroll on August 25, 1948, was invalid, he sued the company to recover ten cents an hour for the time he served from July 13, 1947, until April 25, 1948, amounting to $171.10.[3] The case was tried without a jury; the facts were stipulated by counsel; and the court below entered judgment for defendant. It will be affirmed.

We need not be detained by the divergent opinions of the effect of a collective bargaining agreement. Whether such an agreement is merely an offer, or only establishes a usage in the business, or constitutes the terms of the employment is not here the subject of debate.[4] Appellant is a member of the union and has sued his employer upon the contract. He thereby adopted it as his contract of employment, and, as will be demonstrated, ratified the act *of his agent* who made it.

Nor need we be long concerned with the relation appellant bears to the contract. At one point in his brief appellant describes himself as a donee beneficiary. But in his complaint he averred that the union was "the collective bargaining agency for the plaintiff"; and he is bound by his allegation. The averment accords with our decisions in analogous cases. In *Prentice Unemployment Compensation Case,* 161 Pa. Superior Ct. 630, 637, 56 A. 2d 295, Judge DITHRICH said: ". . . [T]he principle [is] that a member of a union designates his union

---

[3] Appellant's brief states that 33 other employes also left their employment before the date of the arbitrators' decision.

[4] See discussions, 2 Williston on Contracts, §379A, and 31 Am. Jur., Labor, §96.

representatives to act for him as his agents in all matters pertaining to his employment, such as collective bargaining . . ." See also *Loerlein Unemployment Compensation Case,* 162 Pa. Superior Ct. 216, 56 A. 2d 269. Appellant is a principal and his case is to be adjudged according to the principles of agency. However, it may be said that were he technically a donee beneficiary, recovery would be denied under *Williams v. Paxson Coal Co.,* 346 Pa. 468, 31 A. 2d 69, which adopted Restatement, Contracts, §140.[5]

Before proceeding further, the process by which the instant contract was changed should be examined. It has been called an arbitration, and it was an arbitration in the sense that it settled a controversy between the company and the union. Ordinarily, however, an arbitration settles a dispute arising out of a contract and usually requires the interpretation or application of the terms of the contract to specific facts. In theory, it is a substitute for a proceeding in court. 3 Am. Jur., Arbitration and Award, §4. Here the arbitrators, acting under the authority of the contract and pursuant to the submission of proposals by both parties, rewrote and revised the contract by changing material provisions contained in it. In short, the contract was changed by virtue of provisions in the contract which contemplated changes and provided methods for its change, modification or amendment.

---

[5] Restatement, Contracts, §140: "There can be no donee beneficiary or creditor beneficiary unless a contract has been formed between a promisor and promisee; and if a contract is conditional, voidable, or unenforceable at the time of its formation, or subsequently ceases to be binding in whole or in part because of impossibility, illegality or the present or prospective failure of the promisee to perform a return promise which was the consideration for the promisor's promise, the right of a donee beneficiary or creditor beneficiary under the contract is subject to the same limitation."

Appellant is suing upon the contract and is bound by its provisions, including the stipulations for its modification. He is suing for the increased wages provided by one change in the contract and denying the validity of the change made at the same time concerning retroactivity of the new wage scale. He was bound by the terms providing for an arbitration, and by the results of the arbitration. He cannot assert that the union acting as his agent could, agreeably to the contract providing for changes, accept the decision of arbitrators changing the rates of wages and deny his agent's authority to agree to the condition upon which the wages were increased. "If he [the principal] would have the benefit of the bargain, he must adopt it as his agent made it": *Keough v. Leslie,* 92 Pa. 424, 427. "The plaintiff . . . is seeking to enforce the contract made by its agent, and even if as a matter of fact that agent exceeded his authority, yet if the plaintiff company seeks to take the benefit of the bargain so made, it must adopt the contract as its agent made it": *Singer Mfg. Co. v. Christian,* 211 Pa. 534, 541, 60 A. 1087. See also *Federal Sales Co. v. Farrell,* 264 Pa. 149, 107 A. 668; *Danish Pride Milk Products Co. v. Marcus,* 272 Pa. 340, 116 A. 303; *Dixie Furniture Co. v. Packel,* 87 Pa. Superior Ct. 106. Even if appellant's agent lacked specific authority, institution of a suit upon the agreement constituted ratification of it. Restatement, Agency, §97.[6]

Appellant's principal contention is that the provision in the original contract conferred upon him a vested

---

[6] Restatement, Agency, §97: "There is affirmance if the purported principal, with knowledge of the facts, in an action in which the third person or the purported agent is an adverse party: (a) brings suit to enforce promises which were part of the unauthorized transaction or to secure interests which were the fruit of such transaction and to which he would be entitled only if the act had been authorized; . . ."

right to any increase of wages allowed during its term, a right of which he cannot be constitutionally deprived by a subsequent alteration of the contract. The contention lacks substance. The essence of a vested right is fixity; rights are vested only when they are fixed, unalterable, or irrevocable. Appellant had no vested right to an increase of wages. His rate of wages was defined by the contract, and it could be increased only by changing the contract. The time when an increase of wages was to become effective was also, by the terms of the contract, subject to change. It is a paradox to say that one has a vested, that is, a fixed, right in a provision of a contract which by its very terms is impermanent, because it is subject to change. Appellant's right to the increased wages would have vested on August 25, 1948, had he remained in the company's employ—and not before. His right to share retroactively in increased wages was a mere expectancy; it depended upon the continuation of existing circumstances; that is, upon the continuing operation of the original contract without alteration by the parties. See 11 Am. Jur., Constitutional Law, §370.

Judgment affirmed.