HOWARD BROTHERS MANUFACTURING COMPANY *vs.* DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & others

(and a companion case[1]).

Worcester.   September 27, 1955. — November 16, 1955.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Employment Security,* Voluntary unemployment.   *Strike.   Labor.*

Under a contract between an employer and a labor union binding the employer's employees, whereby certain procedures for the settlement of disputes by negotiation or arbitration were provided, the employees were not to strike, and the employer had the right "to relieve employees because of lack of work" subject to such procedures, the employees, by all striking in violation of the contract without availing themselves of such procedures upon the employer's adopting a plan to reduce the level of production by having one half of them work one week and the other half the next week and so on, "left . . . [their] work . . . without good cause attributable to" the employer within § 25 (e) of the employment security law, G. L. (Ter. Ed.) c. 151A, as appearing in St. 1953, c. 401, and were precluded from obtaining benefits under the law except by qualifying by four weeks of work in accordance with § 25 (e); notices sent to them by the employer after they had struck informing them that they were removed from the pay roll and no longer considered employees were immaterial.

---

[1] The companion case is Howard Brothers Manufacturing Company *vs.* Director of the Division of Employment Security & others.

Two PETITIONS, filed in the Central District Court of Worcester on October 26, 1954, for review of decisions of the board of review in the division of employment security.

The cases were heard by *Goldberg, J.*

*James S. Gratton,* for the petitioner.

*Amos E. Wasgatt, Jr.,* for the respondent claimants.

*George Fingold,* Attorney General, *Stephen F. LoPiano, Jr., & Lazarus A. Aaronson,* Assistant Attorneys General, for the director of the division of employment security, submitted a brief.

QUA, C.J.  These are appeals under G. L. (Ter. Ed.) c. 151A, § 42, as last previously amended by St. 1951, c. 763, § 18 [1] from decisions of a judge of the Central District Court of Worcester which sustained decisions of the board of review granting benefits respectively to two groups of claimants under the employment security law.  The facts, which are substantially the same in each case, are established by the decisions of the board.[2]  No contention is made that they were not supported by evidence.  Our duty is to determine what final decision is required on the facts found. § 42.

The pertinent facts are these:  The claimants were all employed as card setters by the appellant, hereinafter called the company, which manufactures card cloth and coverings. They were members of a union which was their bargaining agent.  A contract was in force between the union and the company.  The contract regulated the "normal work day,"

---

[1] A further amendment by St. 1954, c. 681, § 12, making applicable the standards for review provided by paragraph (8) of § 14 of the State administrative procedure law does not apply in these cases.  See St. 1954, c. 681, § 22.

[2] We agree with the suggestion in the employees' brief that the decisions of the board of review which formed the bases of the action of the judge of the District Court should have been printed or otherwise formally incorporated, with the requisite number of copies, as part of the record for the use of the justices of this court instead of being submitted to us in the form of a single multigraphed copy in each case.  See G. L. (Ter. Ed.) c. 231, § 135, as amended by St. 1941, c. 187; Rule I of the Rules of the District Courts Regulating Appeals under the Employment Security Law; and Rules 1 and 10 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 692, 697.  However in this instance all parties have treated the copies as true copies, and no effort has been made to correct the record.  We accept the copies as the parties have done.

"normal work week," hourly wages, and other terms of employment. In article VII, under the head of "Grievances and Disputes," it contained this provision: "Should any differences arise between the employer and the union or any employee, there shall be no suspension of work on account of such difference. An earnest effort shall be made to settle such differences immediately by conferences in the following order: . . . ." Then follows a statement of successive procedures to be pursued, ending with this: "In the event the dispute shall not be satisfactorily settled, the matter shall then be referred to the Department of the U. S. Conciliation Service, whose decision shall be final and binding on both parties." The management of the plant and the direction of working forces, including the right "to relieve employees because of lack of work or for other legitimate reasons," were "vested exclusively in the company," subject to the provisions of article VII.

On March 9, 1954, the company concluded that it could not operate at its then level of production owing to its high inventory and the falling off of orders, so that on that day it presented three plans to the union's grievance and negotiating committee, (1) a plan whereby half the card setters would work in one week, the other half in the next week and so on alternating, (2) a complete "lay off" of twelve employees, the others to continue in full employment, and (3) a temporary "lay off" of twelve employees. All three plans called for full utilization of the services of those who worked, and for some of them to operate machines other than their own. The employees met but could not agree on which plan they would accept. After a second conference on March 11 the committee reported that the employees could not agree and preferred that the management put into operation whichever plan it chose. The company chose plan (1) by which the groups of employees would alternate, and in accordance with seniority gave a list to the foreman indicating which employees were to work on Monday, March 15, and which were to work on Monday, March 22. But on Saturday, March 13, before either of the separate

groups began to work as assigned, the employees held a meeting and all agreed not to report for work under the proposed plan. On March 18 the company notified all who were to have reported on the fifteenth that they were removed from the pay roll and no longer considered employees. When the group who were assigned for work on March 22 also failed to appear a similar notice went out to them.

Under the terms of the contract, by which the claimants were bound (*Moen* v. *Director of the Division of Employment Security*, 324 Mass. 246, 249), the company did not guarantee continuous employment to any particular number of employees. It reserved the right to "relieve" employees for lack of work or for other legitimate reasons, subject always to the negotiation and arbitration provisions. The employees had also agreed not to strike. Instead of seeking negotiation or arbitration as provided in the contract they did strike. The concerted agreement of all the employees on March 13 not to work was a strike. The board recognized it as a strike. The act (§ 25 [e], as amended) provides that no benefits shall be paid to an individual for "the period of unemployment next ensuing and until the individual has had at least four weeks of work in employment subject to this chapter and in each of said weeks has earned an amount equivalent to or in excess of his weekly benefit amount after he has left his work (1) without good cause attributable to the employing unit or its agent." All of the claimants voluntarily left their work by striking in violation of their contract. They could have continued to work on the reduced schedule. If this was unsatisfactory to them they could have sought arbitration according to the contract. Or they might have become entitled to benefits for partial unemployment under § 29 (b), as amended. Since the claimants left their work while substantial work still remained for them to do and in violation of their contract, they left "without good cause attributable to the employing unit or its agent." No wrongful conduct on the part of the employing unit is shown. The decision of the

board fails to take into consideration the requirement of at least four weeks of resumption of work in employment subject to the act as required by § 25 (e), as appearing in St. 1953, c. 401. See also § 25 (b) (4), added by St. 1953, c. 464. And since the claimants' period of unemployment began with and was "next ensuing" their voluntary leaving, they are precisely within § 25 (e), as amended. The notices subsequently sent to the claimants by the employer are immaterial. They simply recognized the fact that the claimants had already left their jobs.

This decision is in line with the general purpose of the employment security law, which is to afford benefits to persons who are out of work and unable to secure work through no fault of their own. It is not the purpose of the law to provide strike benefits for persons who have voluntarily left their jobs in violation of contract, and this remains true even after the strike has technically come to an end through replacement of employees. In *Olechnicky* v. *Director of the Division of Employment Security*, 325 Mass. 660, this court held that an employee could be found to have voluntarily left his employment under § 25 (e) (1) when in the circumstances of that case he remained absent for two days without notifying his employer. The result here reached finds some support in several decisions of other courts in similar or analogous situations. *Duquesne Brewing Co. of Pittsburgh* v. *Unemployment Compensation Board of Review*, 162 Pa. Super. Ct. 216, affirmed 359 Pa. 535. *Yellow Cab Co. of Philadelphia* v. *Unemployment Compensation Board of Review*, 170 Pa. Super. Ct. 625. *Milne Chair Co.* v. *Hake*, 190 Tenn. 395, 405–406 (on rehearing). *Streeter* v. *Industrial Commission*, 269 Wis. 412.

In each case the decision of the judge of the District Court is reversed and the director is to enter an order denying all benefits to the claimants unless, since they left work with the company, they shall have qualified by four weeks of work in employment subject to the act in accordance with § 25 (e) as amended.

*So ordered.*