## Kern v. Duquesne Brewing Co. of Pittsburgh

*James A. Ashton,* for plaintiffs.

*Mead J. Mulvihill,* and *Schafer & Schafer,* for defendants.

McNAUGHER, P. J., November 26, 1958.—This complaint in equity was filed April 24, 1958, by employes or former employes of the corporate defendants for the reinstatement of certain of them and other employes who have been laid off as a result of a dispute in the method of determining their seniority. The prayers of the bill are as follows: (1) That an injunction be issued restraining defendants from changing the job seniority rights of plaintiffs as established prior to January 1, 1950; (2) that corporate defendants be required to reinstate plaintiffs and others discharged or laid off as a result of their failure to recognize their seniority; (3) that corporate defendants be required to adjust the seniority in accordance with the principle of "departmental seniority", and (4) that damages be awarded plaintiffs and others by reason of loss of wages. The case is now before us on the preliminary objections of all the defendants.

The corporate defendants are engaged in the business of brewing, bottling and selling of beer and allied products in interstate and intrastate commerce. Pursuant to certification of the National Labor Relations Board dated February 8, 1949, the defendant labor union is the bargaining agent for the employes of the corporate defendants. Prior to 1950, defendant Duquesne Brewing Company of Pittsburgh maintained three plants for the brewing and bottling of beer and allied products; Carnegie, McKees Rocks and South Side, Pittsburgh. Defendant Pittsburgh Brewing Company maintained two plants, one known as

the Iron City Brewery, and one other known as the E. & O. Brewing Company.

From April 1, 1947, down to the present time defendants have maintained an employe classification wherein all employes have fallen into the following groups:

1. Regular Employes—all those employed for regular work prior to April 1, 1947;

2. Extra Employes—all those employed for regular work after April 1, 1947:

3. Temporary Employes—all other employes.

At various times during the years minor changes in these classifications have been made, such as the provision that an employe shall be deemed to have been employed for regular work if he has completed one year of continuous service, and in the event of the death, retirement or other termination of employment of a regular employe after April 1, 1952, the extra employe with the highest seniority in the department shall be classified as a regular employe. Extra or temporary employes are not eligible for active union membership and such employes do not have the right to have grievances processed.

April 1, 1949, a collective bargaining agreement was entered into between corporate defendants and the defendant local union. We quote from section 15 of this agreement, the provisions of which are substantially the same as those covering the same subjects in the April 1, 1951, agreement:

"Seniority: (a) The principle of seniority shall govern in case of lay-off and return to work in each respective department of each employer in accordance with the rules set forth in this section. . . .

"(b) Should it become necessary to lay off employes in any plant, all temporary employes must be laid off first; and then the extra employes in that plant shall

be paid off impartially according to the length of the last period of their continuous employment with the plant; the last extra man hired to be the first man laid off and so on in order.

"(c) Regular employes shall not be affected until all temporary and extra employes have been first laid off. All such regular employes shall receive an equalization of work in their respective departments. No regular employe shall be paid off for less than one (1) day at a time. . . .

"Any dispute concerning break in seniority shall be subject to grievance procedure.

"(g) Any regular employe covered by an identical agreement with any brewery in the Pittsburgh Labor District, transferring to another brewery which is party to such contract, because of shut down, slack season or other reasons beyond the employe's control, who works in the Brewery to which he transfers for 90 days of continuous employment shall be credited with all his accumulated seniority from the brewery of transfer, plus seniority credits from the date of employment with his new employer; provided however: (a) This section shall not apply to filling vacancies or promotion in the Delivery Department, . . .

"(h) The employer shall within thirty (30) days from the date of the signing of this contract post in a conspicuous place a list of all employes showing the starting date of their last continuous employment. Errors in the seniority lists shall be corrected within thirty days from the date of posting, after which time the corrected list shall stand as a permanent record for the purpose of establishing seniority."

About January 1, 1950, the defendant Duquesne Brewing Company closed its plant at McKees Rocks and later also closed its Carnegie Plant, and its employes were transferred from both of these plants to

the South Side Plant, carrying with them the senority they had acquired at the plant from which they were transferred.

About October 1, 1952, the defendant Pittsburgh Brewing Company closed its E. & O. Brewing Company Plant and its employes were transferred to the Iron City Plant, carrying with them the seniority acquired at the E. & O.

Plaintiffs contend that a seniority roster was posted at the two remaining plants of the corporate defendants shortly after these transfers were made, and although they attempted protest, nothing could be done because of their inability to obtain active union status or regular employe status. However, on May 11, 1956, some of the plaintiffs attained active union status by becoming regular employes and immediately filed a grievance. Both the corporate defendants and the local union refused to process said grievance on the ground that company wide seniority governed and also that they had delayed too long and the doctrine of laches should bar their action. On October 1st they requested the secretary of the local union to submit the matter to arbitration, which was denied and on appeal the Executive Board of the International Union on December 7, 1956, sustained the local union. June 17, 1957, defendant companies posted a consolidated seniority list with the concurrence of the local union, and August 1, 1957, defendant union and the corporate defendants entered into a bargaining agreement by which the consolidated seniority list was ratified and confirmed in the following language:

"Section 15(h) The seniority of employes as set forth on the consolidated seniority lists dated June 17, 1957, is hereby ratified and confirmed, and said lists shall in all respects be conclusive with respect to the seniority of employes listed thereon. . . ."

In their preliminary objections defendants demur to the complaint on the ground that the contract under which plaintiffs claim is not currently subsisting. Other preliminary objections are: That defendants are bound by the terms of the presently existing bargaining agreement; that this court does not have jurisdiction because plaintiffs' only remedy lies within the union structure; that plaintiffs are guilty of laches; that the complaint should be stricken off as a class action because of lack of conformity to law or rule of court; that plaintiffs failed to exercise a statutory remedy; that plaintiffs have failed to join necessary parties, and that the complaint is not sufficiently specific.

Defendants assert that the contract under which plaintiffs claim is not currently subsisting and that therefore they have no standing before the court. We reach the same conclusion. They are claiming, not independently, but under a contract negotiated by the union prior to January 1, 1950, and another or other contracts within two years thereafter. Even though during the period of the negotiations they were not members thereof, they have now become so, are claiming as such, and have ratified the acts of the union, which by agreements with the employers down through the years and including the current agreements have approved of the consolidated seniority lists about which the plaintiffs complain. The latter are now bound by the contracts of their union acting as their agent. See Miller v. Johnstown Traction Company, 167 Pa. Superior Ct. 421, page 425:

"Appellant is a member of the union and has sued his employer upon the contract. He thereby adopted it as his contract of employment, and, as will be demonstrated, ratified the act of his agent who made it."

See also Langhurst v. P. & L. E. R. R. Co., 97 Pitts. L. J. 516, an opinion written by Judge Weiss of our court; System Federation No. 59 of Railway Employment Department of American Federation of Labor v. Louisiana & A. Ry. Co., 19 F. 2d 509, and Elder v. New York Cent. R. Co., 152 F. 2d 361.

Plaintiffs cite Paul Specht et al. v. Fort Pitt Brewing Co. et al., no. 1198, January term, 1956, in equity in this court, as involving the same issue. In that case Judge Ellenbogen decided that where in the same company two plants had been in operation and one was closed, employes of the latter could not on the seniority list "bump" employes of the remaining plant but that, under the contract at that time existing, plant departmental seniority must prevail. Here it appears that a like situation existed during the time the transfers were made in 1950 and 1952, but consolidated lists were posted without objection from the union which specifically ratified these lists in the agreement of August 1, 1957, supra. Whether or not there were intervening agreements covering the same subject does not appear. The important distinction between the cases is that Judge Ellenbogen was interpreting a contract then existing and which had not been modified before the complaint was filed. Here the contrary appears.

The question of the jurisdiction of this court is also raised. In the case of McMenamin v. Philadelphia Transport Company, 356 Pa. 88, certain employes who had been "discharged for cause" were seeking reinstatement as employes and to be restored to their original places on the seniority list. They were not members of the union but presented their claim to the union and were refused. They thereupon filed a bill in equity for an injunction to compel their reinstatement. The court held:

"Seniority rights, life insurance, health insurance, and pension benefits, secured to an employe by virtue of the contract of employment do constitute property rights which a court of equity will protect. . . . Distinction must be recognized, however, between existing property rights which have as their source a valid and subsisting contract of employment, and inchoate or potential rights which could become real only by establishment or reestablishment of a contract of employment": Page 91.

"Seniority rights and other benefits are not independent and self-existing rights. They arise only as incidental to a valid subsisting contract of employment. Their origin and continuance depend upon the contingency of continued employment. Termination of the contract of employment, whether wrongful or not, destroys the source of the rights and thereby extinguishes the rights themselves. Those rights which might have been protected by a court of equity no longer exist, and will not be re-created by a decree of a court of equity requiring specific performance of a contract for personal services. The remedy, if any, is an action at law for damages": Page 93.

Therefore, in a determination whether or not plaintiffs are entitled to a certain place on a seniority roster, their contract of employment being still in existence, this court has jurisdiction.

Although the other preliminary objections raise questions which in our view of the case are unnecessary to decide, we briefly refer to them.

On the question of laches, plaintiffs complain of acts of the employer relating to transfers which took place in 1950 and 1952. The complaint was not filed until April 24, 1958. They point out that they were not members of the union nor regular employes at that time but that when some of them attained active union

status on May 11, 1956, and could do so they immediately filed a grievance with the union. The latter refused the claim and the executive board of the international union sustained its action December 7, 1956. About a year and a half afterward the complaint was filed. Under the circumstances, we consider that plaintiffs are guilty of laches and the preliminary objection will be sustained.

As to the objection that the complaint should be stricken off as a class action, we do not feel that it is strictly such because of the nature of a seniority list and the conflicting interests of the employes. However, as the plaintiffs counsel agrees in his brief, even though we support defendants' position on this point, the case could continue as to the individual claims of plaintiffs. See 3 Goodrich-Amram, Standard Pa. Practice, Commentary on Rule 2230(a)1, at page 76:

"When a class action is improperly brought, in that the plaintiffs do not represent the absent members of the class, the action will not be dismissed but may continue as to the individual claims of the plaintiffs."

This objection will be overruled.

It is also contended that plaintiffs have failed to exercise a statutory remedy. The point involved is that the question should have been taken to the National Labor Relations Board. This could not have been done because a complaint alleging an unfair labor practice must be filed with the board within six months of the date of its occurrence, and we have already held that this court has jurisdiction over the subject matter. This objection will be overruled.

Defendants urge that plaintiffs have failed to join necessary parties to the suit, namely the international union, the Western Pennsylvania Brewers Association, and the other employes whose rights might be affected by a decision in this case. It is well settled

that persons against whom no redress is sought need not be joined. This rule would apply to both the international union, and the brewers association, and the employes involved are represented in this case by their agent the local union. This objection will be overruled.

The last point raised in defendants' preliminary objections is that plaintiffs be required to file a more specific pleading. We think it is sufficient but in any event it has now become immaterial in view of the disposition which we are making of the case. This objection will be overruled.

### Order

And now, to wit, November 26, 1958, defendants' demurrer is sustained on the ground that the contract under which plaintiffs claim is not currently subsisting and that defendants are bound by the terms of the present existing bargaining agreement; defendants' objection on the ground of laches is sustained; defendants' other preliminary objections are overruled, and the bill of complaint is hereby dismissed.