Paul FRIEDRICH, Roger Hall, Tom Hanrahan, Richard Omvig, Roseanne Saunders, Richard Schaefer, Jack Wasneski, and Steve Zizza, Plaintiffs,

v.

U.S. COMPUTER SERVICES, INC., d/b/a Cabledata, Defendant.

Civ. A. No. 90–1615.

United States District Court, E.D. Pennsylvania.

Aug. 27, 1993.

Denis M. Dunn, Mary Rogers Auchincloss, Petrikin, Wellman Damico, Carney & Brown, Media, PA, for plaintiffs.

Alexia Kita Blake, Barnett Satinsky, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for defendants.

## *OPINION*

GAWTHROP, District Judge.

Plaintiffs, current or former employees of defendant, brought this action seeking overtime compensation allegedly owed them by defendant under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA"), the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101 *et seq.* ("PMWA"), and the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1 *et seq.* ("WPCL"). On September 3, 1991, this court entered summary judgment in favor of defendant on the FLSA claims. 787 F.Supp. 449 (E.D.Pa. 1991). Plaintiffs appealed[1] and the Third Circuit affirmed. 974 F.2d 409 (3d Cir.1992). Defendant now moves for summary judgment on the remaining state law claims. Upon the following reasoning, I shall grant the motion as to plaintiffs' claims from July 9, 1990, forward and as to plaintiffs' claims with respect to "on-call" time, and shall deny the motion as to the rest of plaintiffs' claims.

## BACKGROUND

Defendant supplies computer hardware and software to cable television companies. It also provides installation, maintenance, and repair services for its equipment. Plaintiffs worked as field engineers in defendant's Northeast Region Office in Broomall, Pennsylvania.[2] Their duties included driving to customer sites in Pennsylvania, New York, New Jersey, Delaware, Maryland, Virginia, West Virginia, and the District of Colombia to install, maintain, repair, and provide expertise on computer hardware sold by defendant. They carried with them tool kits and replacement parts and equipment. At issue in this case is whether plaintiffs received

---

1. On December 19, 1991, this court certified the judgment for appeal under Fed.R.Civ.P. 54(b).

2. Although some of the plaintiffs are still employed by defendant, for linguistic simplicity, I shall refer to all the facts of this case, including plaintiffs' employment, in the past tense.

proper overtime compensation from defendant.

This court previously has held, and the Third Circuit has agreed, that (1) plaintiffs fall within the exemption to the FLSA carved out by the Motor Carrier Act of 1935 ("MCA"), and (2) the United States Department of Transportation ("DOT") retains the power to establish maximum hours of employment for plaintiffs, employees of motor private carriers who drive lightweight vehicles in interstate commerce. Because DOT has not exercised its power to establish maximum hours, and because the FLSA does not protect plaintiffs, they cannot recover from defendant under federal law. At issue now is whether plaintiffs can recover under state law.

Defendant's payment scheme worked as follows: each employee had an annual salary. That annual salary was divided by 52 to determine the employee's weekly salary. The weekly salary served as compensation for whatever hours the employee worked during a particular week. In addition, defendant paid overtime wages to the employee for any hours over 40 worked by the employee in a particular week. The overtime amount was calculated by first determining the employee's "regular rate" for the week, which was done by dividing the employee's weekly salary by the number of hours the employee had worked during the week. Then, to determine the overtime rate, the regular rate was halved. To figure the amount of overtime pay due the employee, the overtime rate was multiplied by the number of hours—in excess of 40—which the employee had worked during the week. The employee's total pay was the weekly salary plus the overtime pay.

For example, suppose an employee with a $52,000 annual salary, i.e. a $1000 weekly salary. If that employee worked 50 hours in a particular week, the employee's "regular rate" would be $1000/50 hours = $20/hour. Thus, the overtime rate would be $20/2 = $10/hour, and the overtime pay due the employee would be $10 × 10 hours = $100. The employee's total pay for the week would be $1000 (the weekly salary) plus $100 (the overtime pay), for a total of $1100.

## DISCUSSION

### Jurisdiction

■ Before discussing the merits of the parties' arguments, the court must examine the issue of jurisdiction. This court originally found there to be jurisdiction under 28 U.S.C. § 1331 because of the presence of a federal question, although plaintiffs also asserted that the court had jurisdiction under 28 U.S.C. § 1332 because of the diversity of the parties' citizenship. Although the federal claim has now been dismissed, plaintiffs ask the court to exercise pendent jurisdiction over the remaining state law claims under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

However, the Third Circuit repeatedly has held "pendent jurisdiction should be declined where the federal claims are no longer viable, absent 'extraordinary circumstances.'" *Shaffer v. Board of School Directors of Albert Gallatin Area School Dist.*, 730 F.2d 910, 912 (3d Cir.1984) (quoting *Weaver v. Marine Bank*, 683 F.2d 744, 746 (3d Cir. 1982) and *Tully v. Mott Supermarkets*, 540 F.2d 187 (3d Cir.1976)). In *Shaffer*, the Third Circuit dismissed the plaintiff's federal claims and remanded the case to the district court. The district court exercised pendent jurisdiction because, it said, "'[f]ailure to retain jurisdiction will result in inconvenience, undue delay, additional expense, [and] loss of judicial economy and effort.'" *Shaffer*, 730 F.2d 910. The Third Circuit reversed, holding that no "particular prejudice would result from a delay in the adjudication of plaintiff's claims" and that "'[t]he fact that some investment of time has already been made' should not be given dispositive weight." *Id.* Here, no particular prejudice would come to plaintiffs from some additional delay in the resolution of this not-young case. Nor would there be much additional expense, since the parties could easily file essentially the same briefs in a state court as they have filed here. Finally, as the Third Circuit has said, the amount of time invested by the parties and this court is not a factor. In *Shaffer*, the Third Circuit observed that "where the underlying issue of state law is a question of

first impression with important implications ... in Pennsylvania, factors weighing in favor of state court adjudication certainly predominate." *Id.* at 913. Upon the same reasoning, this court shall not exercise pendent jurisdiction.

■ Plaintiffs also argue that diversity jurisdiction exists. Defendant acknowledges that complete diversity of citizenship exists, but defendant disputes that any of the plaintiffs has a claim exceeding $50,000, the monetary hurdle which diversity cases must clear. The Supreme Court has held that in class actions and other cases involving multiple plaintiffs, it is essential that the demand of each plaintiff be of the requisite jurisdictional amount. *See, e.g., Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Troy Bank v. G.A. Whitehead & Co.,* 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81 (1911). In the complaint, each plaintiff claims in excess of $50,000. Based on the figures submitted in plaintiffs' brief in opposition to the current motion for summary judgment, the court has calculated that each plaintiff's claim reasonably could exceed the $50,000 threshold.[3] Thus, diversity jurisdiction exists.

*Summary Judgment Standard*

■ Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The inquiry for the court is "whether the evidence pres-

ents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251–52, 106 S.Ct. 2505–512, 91 L.Ed.2d 202 (1986). A party opposing summary judgment must marshal sufficient facts to show that there is a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

*Applicability of 34 Pa.Code § 231.43(b)*

■ Defendant argues that its overtime compensation scheme complies with 43 P.S. § 333.104(c), which states: "[e]mployes shall be paid for overtime not less than one and one-half times the employe's regular rate as prescribed in regulations promulgated by the secretary: Provided, ... That the secretary shall promulgate regulations with respect to overtime subject to the limitations that no pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek."

Pursuant to the statute, the Secretary of Labor and Industry, through the Industrial Board of the Department of Labor and Industry, at 34 Pa.Code § 231.43, has promulgated a regulation governing the computation of the regular rate. Defendant points to subsection (b) of § 231.43, which states:

> [i]f the employe is paid a flat sum for a day's work or for doing a particular job without regard to the number of hours

---

**3.** Plaintiffs state that their annual pay ranged from $25,000 to $40,000. Based on these figures, plaintiffs' regular rates, using 40 hours per week as the divisor (as plaintiffs wish), were between $12.02 and $19.23. In the complaint, plaintiffs allege that they worked 55 to 75 hours per week, or 15 to 35 hours overtime per week. Plaintiffs acknowledge that they received half-time for their overtime hours, but argue that they should have received time-and-a-half. Thus, the amount in dispute is the difference between half-time and time-and-a-half, which is an amount somewhat higher than the 40–hour regular rate itself. Therefore, plaintiffs' claims are for at least $12.02 to $19.23 per hour for 15 to 35 hours per week, which computes to $9376 to $34,999 per year.

Plaintiffs claim these amounts for each year of their employment, even those years for which the statute of limitations may have run, arguing that

the limitations period should be tolled because defendant failed to post notices of the overtime payment scheme. I agree with plaintiffs that the limitations period was tolled. *See, infra,* at 478–479.

In addition, plaintiffs claim an entitlement to 25% of their damages claims under the WPCL. Thus, plaintiffs' claims increase to at least $11,720 to $43,749 per year for the entire terms of their employment up to July 9, 1990, the date on which the Pennsylvania General Assembly passed a Motor Carrier exception to the PMWA. *See, infra,* at 477–478.

Without an individual examination of each plaintiff's claims, for which the parties have not provided sufficient information, these estimates are the best available to the court. Based on them, I find that each plaintiff has claimed an amount in excess of $50,000.

worked in the day or at the job and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

34 Pa.Code § 231.43(b).

It is clear from a comparison of defendant's overtime compensation scheme, see supra at 472–473, and § 231.43(b) that defendant's scheme satisfies the regulation. In fact, in a Memorandum and Order filed August 23, 1990, this court found that plaintiffs were compensated in a manner consistent with § 231.43(b). 1990 WL 124967 (E.D.Pa. Aug. 23, 1990). Therefore, if § 231.43(b) applies to plaintiffs, i.e. if plaintiffs were "paid a flat sum for a day's work or for doing a particular job without regard to the number of hours worked in the day or at the job," then defendant's compensation scheme was proper.

Plaintiffs argue that they were hourly employees, not salaried, day-rate, or job-rate employees. Therefore, they say, § 231.43(b) does not apply, and they are entitled to one and one-half times their regular rate for their overtime hours under 43 P.S. § 333.-104(c). In the Memorandum and Order of August 23, 1990, this court held: "plaintiffs, contrary to their assertions, were not paid on an hourly basis, but were paid on a bi-weekly basis according to a two-week pro-rata proportion of their annual salaries." Id., slip op. at 5 (emphasis supplied). I reaffirm that holding here.

Each plaintiff received an annual salary in 26 bi-weekly payments each year. The amount of each payment often was adjusted upward to compensate the employee for working overtime, but these upward adjustments did not change the fact that plaintiffs were salaried employees. They received a base salary plus overtime. Plaintiffs' regular rates varied from week to week depending on the number of hours they worked. There was no consistent "hourly" rate. Many of plaintiffs' depositions show that, when negotiating with defendant before being hired, the negotiations centered on what the employee's annual salary would be, not what his or her hourly rate would be.

In the Memorandum and Order of August 23, 1990, I declined to enter summary judgment in favor of defendants on the FLSA claims because I found there to be an issue of fact as to whether plaintiffs and defendant had a "clear mutual understanding" that plaintiffs' salaries were to cover all hours worked during the week or only the first 40. Id., slip op. at 5–8. However, the finding of a possible lack of mutual understanding was only with respect to the overtime scheme, not with respect to the general weekly salary scheme. I found in that Memorandum and Order, and I find again here, that plaintiffs were salaried employees, not hourly employees.

■ The next question which the court must address is one of first impression: does § 231.43(b), which on its face mentions only day-rate and job-rate employees, also apply to salaried (annual or weekly) employees such as plaintiffs? Defendant says that it does; plaintiffs say that it does not.

In my view, plaintiffs were not the kind of employees to whom § 231.43(b) was intended to apply. Plaintiffs had an annual salary which happened to have been paid on a bi-weekly basis. Defendant set up an overtime compensation which complied with § 231.-43(b), but that does not necessarily mean that that regulation actually applied to plaintiffs. Plaintiffs received the same pro-rata portion of their annual salaries every two weeks, regardless of the number of days or hours they worked, and regardless of the number or kind of assignments they completed. They had steady, consistent, year-round jobs with one employer. They received paid vacations, holidays, and sick days. While the numbers of hours or days they worked varied from week to week, their pay did not—except for the overtime.

The above job description does not fit within the category of jobs to which I believe § 231.43(b) was intended to apply. That regulation, speaking as it does in terms of flat sum payments for "a day's work or for doing a particular job" seems to apply to employees

such as migrant farm workers, seasonal construction workers, house painters, and other independent contractors who offer their services on a per-day or per-job basis for a flat fee. Workers such as these do not generally receive paid vacations, holidays, or sick days, as plaintiffs did.

Defendant argues that plaintiffs received the same salaries "regardless of the number of hours worked" as the regulation requires. However, the regulation does not stop there. It says, "regardless of the number of hours worked *in the day or at the job.*" (emphasis supplied.) Again, this language suggests an employee who receives a lump sum for day's work or for doing a particular job, rather than an employee who works for an annual salary disbursed in bi-weekly increments.

The regulation's next clause instructs that the regular rate is to be determined "by totaling *all the sums received at such day rates or job rates* in the workweek and dividing by the total hours actually worked." (emphasis supplied.) Again, the use of the plurals "sums" and "rates" seems to contemplate an employee who contracts to earn money in diverse amounts or from diverse sources, rather than one who earns a regular salary from a single employer. In this case, defendant did not determine the regular rate by adding plaintiffs' income from day rates and job rates for a particular week, and then dividing by the number of hours worked. Nor could it have, since plaintiffs had no day rates or job rates. Rather, defendants took each employee's weekly salary and skipped to the second step, dividing the weekly salary by the hours worked.

Defendant argues that in the Memorandum and Order of August 23, 1990, I found that defendant properly compensated plaintiffs under § 231.43(b). In that Memorandum and Order, I found that defendants properly calculated plaintiffs' overtime compensation under 29 C.F.R. § 778.114, and that § 778.114 applied to plaintiffs. By implication, I found that defendants had properly calculated plaintiffs' overtime compensation under § 231.43(b), since that regulation is "substantially identical to § 778.114 *in its calculation of the regular rate ...*" Slip Op. at 8–9 (emphasis supplied). I have restated

that observation here: defendant did properly compensate plaintiffs, assuming that § 231.43(b) applies. However, the issue now before the court—whether § 231.43(b) applies—was not addressed in the previous Memorandum and Order. As stated above, I find that § 231.43(b) does not apply to plaintiffs. Therefore, it is ultimately irrelevant whether defendants correctly calculated plaintiffs' overtime compensation under that regulation.

Defendant invites the court's attention to *South Florida Beverage Corp. v. Figueredo*, 409 So.2d 490 (Fla.App.1981). In that case, the court applied 29 C.F.R. § 778.112, the federal provision governing day-rate and job-rate employees, to employees who were paid one-fifth of their weekly salaries for each weekday they reported to work. The plaintiffs in that case truly were day-rate employees: they received a flat sum for a day's work regardless of the number of hours they worked that day. The court pointed out that the payments there, which were calculated under § 778.112, were identical to the payments which would have resulted had the calculations been done under 29 C.F.R. § 778.114, which governs salaried employees such as the plaintiffs in this case. In other words, the court observed that under federal law, salaried, day-rate, and job-rate employees are treated alike for overtime purposes.

In this case, defendant has argued that it properly compensated plaintiffs under § 778.114, which governs salaried employees. It has prevailed on that argument. Section 231.43(b) of the Pennsylvania Code is analogous to 29 C.F.R. § 778.112. Both govern day-rate and job-rate employees. In fact, the two regulations are identical, word for word. There is no state-law analog to 29 C.F.R. § 778.114. Defendant argues that this lacuna in the state law must mean that salaried employees are governed by § 231.-43(b). To support its argument, defendant points to the *South Florida* court's observation that §§ 778.112 and 778.114 are "analytically identical." *South Florida*, 409 So.2d at 493. Defendant then points out that § 231.-43(b) is analytically identical to both federal regulations. Indeed, that is true—but only as to the mathematical computations. The

**476**

two federal regulations are not identical in their scopes of coverage. In fact, they are mutually exclusive. Section 778.112 covers day-rate and job-rate employees, and § 778.-114 covers salaried employees. Section 231.-43(b) covers day-rate and job-rate employees, but not salaried employees.[4]

This court's research has discovered that the overtime compensation scheme outlined in the federal regulations was adopted at least as far back as 1950. *See,* 15 Fed.Reg. 624–25.[5] The state regulations were adopted in 1977. *See,* 7 Pa.Bull. 750; 7 Pa.Bull 25. The fact that § 231.43(b) is analytically identical to the two federal regulations—and exactly identical to one of them, § 778.112— indicates that the Industrial Board of the Department of Labor and Industry knew about the federal regulations when drafting the state regulations. The Industrial Board adopted—verbatim—one of the regulations, but did not adopt the other. To hold that the Industrial Board intended to adopt both federal regulations, even though the language of only one appears in the state regulations, would be to ignore what the Industrial Board actually did. While it might be convenient for defendant and other multi-state employers if federal law and Pennsylvania law were identical on the issue of overtime compensation, the fact is that they are not.

Defendant cannot have it both ways. In proving that plaintiffs were not hourly employees, defendant convinced the court that plaintiffs were salaried employees paid on a bi-weekly basis. Now defendant attempts to convince the court that plaintiffs were day-rate employees. As discussed above, they were not. Further, in prevailing on the FLSA claims, defendant convinced the court that 29 C.F.R. § 778.114 applied to plaintiffs. Now defendant attempts to convince the court that § 34 Pa.Code § 231.43(b) applies to plaintiffs. As discussed above, § 231.43(b) is identical to 29 C.F.R. § 778.112, which covers a separate and distinct class of employees from § 778.114. Plaintiffs were cov-

ered by § 778.114, not § 778.112 or § 231.-43(b). Therefore, defendant's compliance with § 231.43(b) does not immunize it from plaintiffs' state law claims.

*PMWA Exclusion of Individuals Subject to FLSA*

■ Before the 1988 Amendments to the PMWA, effective February 1, 1989, the PMWA excluded from its definition of "employe" "any individual to the extent that he is subject to the Federal Fair Labor Standards Act ..." 43 P.S. § 333.103(h), Historical and Statutory Notes. Defendant argues that, since plaintiffs were covered by the FLSA, they were excluded from the coverage of the PMWA before February 1, 1989. However, this court has held, and the Third Circuit has agreed, that plaintiffs were not covered by the FLSA's overtime compensation requirements because of the Motor Carrier Act exemption. 974 F.2d at 419. The PMWA excluded individuals from its coverage only *"to the extent"* that they were subject to the FLSA. Since plaintiffs were not subject to the FLSA's overtime compensation requirements, then the former § 333.103(h) did not exclude them from the PMWA's overtime compensation requirements.

*The Motor Carrier Act Exemption*

■ On July 9, 1990, the Pennsylvania General Assembly amended the PMWA by exempting motor carriers from the minimum wages portion of the PMWA. The exemption provides: "(b) Employment in the following classifications shall be exempt from the overtime provisions of this act [the PMWA]: ... (7) any motor carrier with respect to whom the Federal Secretary of Transportation has power to establish qualifications and maximum hours of service under 49 U.S.C. § 3102(b)(1) and (2). 43 P.S. § 333.105(b)(7). This court has held, and the Third Circuit has agreed, that the Federal Secretary of Transportation has the power to establish qualifications and maximum hours

---

**4.** As plaintiff points out, the Industrial Board knew how to use the word "salary" when it adopted § 231. *See,* 34 Pa.Code §§ 231.82–84. Yet, it did not use that word in § 231.43(b).

**5.** In 1950, the exact language now embodied in § 778.112 existed as 29 C.F.R. § 778.3(b)(3), and the computation method described in current § 778.114 was set out in 29 C.F.R. § 778.3(b)(5). Section 778.114(a) was put into its present form in 1968. *See,* 33 Fed.Reg. 986.

of service for plaintiffs. 974 F.2d at 419. For that reason, plaintiffs' claims under the FLSA have been dismissed. Upon the same reasoning, the motor carrier exemption to the PMWA extinguishes plaintiffs' claims from July 9, 1990, forward.

Sections 4 and 5 of the Act of July 9, 1990, made the motor carrier exemption immediately effective and retroactive to February 1, 1989. However, in *Sanders v. Loomis Armored, Inc.*, 418 Pa.Super. 375, 614 A.2d 320 (1992), the Pennsylvania Superior Court held that retroactive application of the motor carrier exemption would violate both the United States and Pennsylvania Constitutions. The court reasoned that, under the Pennsylvania Supreme Court's holding in *Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80 (1980), "employees have a vested right in their cause of action which cannot be extinguished by the 1990 amendment to the Minimum Wage Act without violating their constitutional right to due process." *Sanders*, 614 A.2d at 324.

Defendant argues that *Sanders* is wrongly decided.[6] According to defendant, employees have no vested right to overtime compensation. However, the *Sanders* court did not hold that employees have a vested right to overtime compensation. Rather, the court held that each plaintiff had a vested right in his or her cause of action, which accrued when that plaintiff worked in excess of forty hours in a week and allegedly was paid less money than the PMWA required.[7] Indeed, in *Gibson*, the Pennsylvania Supreme Court held: " '[t]here is a vested right in an accrued cause of action.' " *Gibson*, 490 Pa. at 161, 415 A.2d at 83 (quoting *Lewis v. Pennsylvania R.R. Co.*, 220 Pa. 317, 324, 69 A. 821, 823 (1908)).

Since this is a question of state law, this court must predict how the Pennsylvania Su-

preme Court would decide it. *Dillinger v. Caterpillar, Inc.*, 959 F.2d 430, 434, n. 11 (3d Cir.1992). While this court need not give decisions of the Pennsylvania Superior Court binding effect, "[a] decision of 'an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' " *Dillinger*, 959 F.2d at 435, n. 11 (quoting *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)).

Given the Pennsylvania Supreme Court's holding in *Gibson* that "the Legislature may not extinguish a right of action which has already accrued to a claimant," *Gibson*, 415 A.2d at 83, and that court's recent reaffirmance of that proposition in *Cranberry Township v. Builders Assoc. of Metro. Pittsburgh*, 533 Pa. 271, 621 A.2d 563 (1993), I believe that the Superior Court's holding in *Sanders* accurately predicts how the Supreme Court would decide the retroactivity issue. Therefore, I hold that retroactive application of the motor carrier exemption would violate plaintiffs' rights under the Due Process Clause of the Pennsylvania Constitution. I shall enter summary judgment in favor of defendant only with respect to plaintiffs' claims from July 9, 1990 forward.

*Statute of Limitations*

Next, defendant argues that plaintiffs' claims before March 8, 1987 are barred by the three-year statute of limitations in 43 P.S. § 260.9a(g).[8] Plaintiffs argue that the statute of limitations has been equitably tolled because defendant failed to post, in a conspicuous place, a summary of the Minimum Wage Act and any applicable regulations promulgated thereunder.[9] Defendant

---

**6.** A petition for allowance of appeal in *Sanders* is currently pending before the Pennsylvania Supreme Court.

**7.** The *Sanders* court cited *Miller v. Johnstown Traction Co.*, 167 Pa.Super. 421, 428, 74 A.2d 508, 511 (1950), for the proposition that "the essence of a vested right is a fixity; rights are vested when they are fixed, unalterable or irrevocable."

**8.** That statute provides: "No ... legal action shall be instituted ... for the collection of unpaid wages ... more than three years after the day on which such wages were due and payable." 43 P.S. § 260.9a(g).

**9.** 43 P.S. § 333.108 provides: "[e]very employer subject to this act shall keep a summary of this act and any regulations issued thereunder applicable to him, posted in a conspicuous place where employes normally pass and can read it."

does not dispute plaintiffs' assertion that there was no posting of the law.

The Third Circuit, in a recent case also governed by § 260.9a(g), described the Pennsylvania standard for tolling:

Under Pennsylvania law governing the doctrine of equitable tolling, it is clear that 'the courts have not required fraud in the strictest sense, encompassing an intent to deceive, but rather have defined fraud in the broadest sense to include an unintentional deception.' *Nesbit v. Erie Coach Co.*, 416 Pa. 89, 96, 204 A.2d 473, 476 (1964). Even under this broad interpretation of fraud, however, it is clear that, in order for the doctrine of equitable tolling to apply, the defendants' actions must have amounted 'to an affirmative inducement to plaintiff to delay bringing the action.' *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir.1985). The intent of the defendant in making this affirmative inducement is irrelevant; 'it is the effect upon the plaintiff, not the intention of the defendant, that is pertinent.' *Swietlowich v. County of Bucks*, 610 F.2d 1157, 1162 (3d Cir.1979). *Connors v. Beth Energy Mines, Inc.*, 920 F.2d 205, 211 (3rd Cir. 1990).

In *Kamens v. Summit Stainless, Inc.*, 586 F.Supp. 324 (E.D.Pa.1984), a suit for overtime compensation under the FLSA, the court held that an employer's failure to post a notice of its employees' rights under the FLSA, as required by 29 C.F.R. § 516.4, tolled the running of the statute of limitations. *Kamens* relied on *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 193 (3d Cir. 1978), for the proposition that "[a]n employer's failure to post a statutorily required notice of this type tolls the running of any period of limitations." In *Bonham*, the Third Circuit held that an employer's failure to post a notice of its employee's rights under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, as required by 29 U.S.C. § 627, tolled the applicable statute of limitations. The court observed:

[t]he posting requirement was undoubtedly created because Congress recognized that the very persons protected by the Act might be unaware of its existence. Failure

to post the required notice will toll the running of the 180-day period, at least until such time as the aggrieved person seeks out an attorney or acquires actual knowledge of his rights ... Any other result would place a duty upon the employer to comply without penalty for breach, and would grant to the employee a right to be informed without redress for violation.

*Bonham*, 569 F.2d at 193.

Although both *Bonham* and *Kamens* were cases construing federal law, their reasoning is equally applicable to this case. Section § 333.108 gives employees the right to have their employers give them notice of their rights under the PMWA. Their only remedy, and the only penalty available against employers, for a violation of § 333.108 is to toll the statute of limitations with respect to the employer's other alleged violations of the PMWA. Without tolling, the purpose of the posting requirement would not be served. Therefore, I hold that the statute of limitations did not begin to run until plaintiffs knew or should have known of their rights. Defendant has not supplied the court with sufficient information to determine with accuracy when any of the plaintiffs knew of his or her rights. That question might well be one which must be left to a jury. At this juncture, I shall deny that portion of defendant's motion for summary judgment which is based on the running of the statute of limitations.

*34 Pa.Code § 231.43(d)*

▮▮ At oral argument, defendant asserted, for the first time, that it is entitled to summary judgment because its overtime compensation scheme complied with 34 Pa. Code § 231.43(d). That section provides that an employer shall not be deemed to have violated the overtime provisions of the PMWA if:

pursuant to an agreement or understanding arrived at between the employer and the employe before performance of the work, the amount paid to the employe for [overtime] (3) is computed at a rate not less than 1½ times the rate established by such agreement or understanding as the basic rate to be used in computing overtime compensation thereunder ...

34. Pa.Code § 231.43(d). In the Memorandum and Order of August 23, 1990, this court held that "plaintiffs' understanding of defendant's method of compensation is yet a genuine issue and material to resolving the propriety of defendant's implementation of § 778.114." While plaintiffs' deposition testimony tends to show that at least some of them had some understanding of the compensation scheme, I find that there is still an issue of fact as to whether an "agreement or understanding"[10] existed between plaintiffs and defendant, and that that issue of fact is material under § 231.43(d).

*"On–Call" Time*

In their opposition to defendant's current motion for summary judgment, plaintiffs assert, for the first time, that they are entitled to overtime compensation for all of their "on call" time—often 18–24 hours per day. Plaintiffs base this assertion on a federal regulation, 29 C.F.R. § 785.17. However, plaintiffs' federal claims have been dismissed. I express no view as to whether plaintiffs actually would be entitled to compensation for on-call time, but I do note that the language of § 785.17 and the facts of this case are far from being mirror images of one another. Plaintiff points to no state statute or regulation which requires employees to be paid overtime for on-call time. Absent such authority, plaintiffs are not entitled to recover for on-call time in this case, which is now based wholly on state law. Therefore, I shall enter summary judgment in favor of defendant with respect to those claims.

An Order follows.

### ORDER

AND NOW, this 25th day of August, 1993, upon consideration of defendant's Motion for Summary Judgment, plaintiffs' response thereto, defendant's reply, and after argument in open court and the supplemental briefs resulting therefrom, the motion is GRANTED as to plaintiffs' claims from July 9, 1990, forward and plaintiffs' claims with

respect to "on-call" time, and DENIED as to the rest of plaintiffs' claims.

---

**10.** Neither party has submitted to the court any authority on what, specifically, would constitute an "agreement or understanding" under § 231.-43(d), and the court has found none.