409 So.2d 490 (1981)
SOUTH FLORIDA BEVERAGE CORPORATION, Appellant,
v.
Efrain FIGUEREDO, et al., Appellees.
No. 80-2172.
District Court of Appeal of Florida, Third District.
December 22, 1981.
Rehearing Denied February 9, 1982.
*491 Hogg, Allen, Ryce, Norton & Blue and W. Reynolds Allen and Lewis E. Shelley, Coral Gables, for appellant.
Kanner, Brown & Lambert and Richard Kanner, Miami, for appellees.
Before BARKDULL, SCHWARTZ and NESBITT, JJ.
SCHWARTZ, Judge.
The South Florida Beverage Corporation appeals from a non-final order, rendered after a bench trial, which held it liable to the plaintiffs, 63 of its present and former employees, for failure to make overtime compensation payments allegedly required by the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.[1] Because we find that the appellant was, as a matter of law, in full compliance with the terms of the statute, we reverse the order under review and direct the dismissal of the complaint.
South Florida does business as the Pepsi-Cola Bottlers of Miami; the plaintiffs worked for the company as route drivers between June 8, 1976 and March 2, 1979. This dispute concerns the determination of the employee-plaintiffs' "regular rate" of pay during that period under the requirement of § 207(a)(1) of the FLSA that
no employer shall employ any of his employees ... for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.[[2]]
More specifically, the issue is whether the regular rate is correctly computed by dividing each employee's stipulated weekly salary by forty  so that, for example, the "regular rate" of a driver employed for $240.00 per week who worked forty-eight hours would be $6.00, requiring an additional $9.00 to be paid for each of the eight hours above forty, or $72.00; or by dividing the salary by the hours actually worked during the week. In the hypothetical situation this would yield a "regular rate" of $5.00 and require an additional payment of half of that for each extra hour over forty hours, *492 or a total of $20.00. The latter method was the one actually employed by Pepsi, and accepted by the drivers and their union without complaint for virtually[3] the whole period in question. Based, however, almost entirely upon a single clause in their collective bargaining agreement,[4] the plaintiffs argued and the trial judge ruled that the former, or the fixed rate-fixed hours method, was required by the FLSA. Because the employees were, in fact, paid on a flatsum-per-day-regardless-of-hours-worked basis which rendered the method of computation of overtime adopted by the parties the appropriate one under the applicable law, we hold that this conclusion was wrong.
The polestar in the determination of the "regular rate" question is the reality of the particular situation, that is, what hours and methods of pay were adopted "in actual fact" by the employer and employee. In an early and often-repeated interpretation of this provision of the FLSA, the Supreme Court so held in Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705, 1710 (1945):
The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact. Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary `regular rate' in the wage contracts.
Accord, e.g., Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 461, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948); 149 Madison Avenue Corp. v. Asselta, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947). In this case, the "actual facts" of the wage-and-hour circumstances of the Pepsi-Cola drivers appear with crystal clarity. Because of the wide disparities in, among other things, their daily duties and the lengths of their routes, the time required of these employees varied considerably from person to person, week to week, and day to day. The parties adopted a modus operandi to reflect and compensate for these fluctuations. Under it, a driver received a guaranteed payment of one-fifth of his designated weekly salary for each weekday he reported for work no matter how many hours he worked on that particular day. If he worked for more than forty hours during the five day workweek,[5] the *493 overtime required by the FLSA was determined, as has been indicated, by dividing the designated weekly salary by the hours worked during that week and adding fifty percent of the result for each of the hours over forty.[6] The following two actual examples illustrate the process:

 1. Plaintiff "A"  contractual salary of
 $220.00 per week.
 Hours worked
 Monday 8.22
 Wednesday 7.12
 Thursday 6.00
 Friday 6.44
 __________________________________
 Actual hours 27.78
 Actual pay: 4 days
 x $44.00 per day (1/5 of $220.00)
 _____________
 $176.00
 2. Plaintiff "B"  contractual salary of
 $244.00 per week.
 Hours worked
 Monday 8.95
 Tuesday 8.20
 Wednesday 9.42
 Thursday 7.88
 Friday 8.76
 __________________________________
 Actual hours 43.21
 Actual pay: 5 days
 x $ 48.80 (1/5 of $244.00)
 ______
 $244.00
 Plus: $244.00 ÷ 43.21 = $5.65 per hour
 $ 5.65 x 1/2 x 3.21 overtime hours
 _______
 $ 9.05
 Total: $253.05

It is abundantly clear that this method of computing and paying overtime was in full accord with the requirements of § 207(a), as authoritatively implemented by the relevant regulations of the Wage and Hour Division, Employment Standards Administration of the U.S. Labor Department and applied in the controlling decisions. The situation involved here is precisely treated in 29 C.F.R. § 778.112:
If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek. [e.s.]
This result is exactly the same as the one applied in 29 C.F.R. § 778.114 to the analytically identical but more common situation of a guaranteed or fixed weekly allowance for fluctuating hours:
Section 778.114 Fixed salary for fluctuating hours.
(a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since *494 the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement. [emphasis supplied][[7]]
The cases establish that these regulations reflect and embody the appropriate judicial resolution of controversies such as this. A large number which so hold are collected in Yadav v. Coleman Oldsmobile, Inc., 538 F.2d 1206, 1207-08 (5th Cir.1976):
The magistrate arrived at his total due figure by applying the so-called `fluctuating work week' formula. See 29 C.F.R. § 778.114 (1975). This was correct and we affirm.
An employee under 29 C.F.R. § 778.114 who is `employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a work week, whether few or many.' It is clear from the record in this case that Ms. Yadav understood that she was to receive a straight salary of $1,000.00 per month for whatever hours she worked. Therefore, her regular rate of pay is determined by dividing the total wage by the total hours actually worked in each particular week. Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 579-581, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942); Brennan v. Lauderdale Yacht Basin, Inc., 493 F.2d 188, 191 (5th Cir.1974); Nunn's Battery & Electric Co. v. Goldberg, 298 F.2d 516, 519 (5th Cir.1962); Warren-Bradshaw Drilling Co. v. Hall, 124 F.2d 42, 44 (5th Cir.1941), aff'd, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83 (1942). See also Mumbower v. Callicott, 526 F.2d 1183, 1187 (8th Cir.1975); Brennan v. Valley Towing Co., Inc., 515 F.2d 100, 104-111 (9th Cir.1975); Triple `AAA' Co. v. Wirtz, 378 F.2d 884, 887 (10th Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967); St. John v. Brown, 38 F. Supp. 385, 389-390 (N.D.Tex. 1941); 29 C.F.R. §§ 778.109, 778.325-326 (1975); cf. Wirtz v. Leon's Auto Parts Co., 406 F.2d 1250 (5th Cir. 1969); Flores Hernandez v. Infanteria Thom McAn, Inc., 516 F.2d 1293, 1296 (1st Cir.1975).
An application of the doctrine expressed in these authorities requires reversal here.
As has been indicated, the trial judge's ruling was, and on this record could have been based only upon the single isolated sentence in the collective bargaining agreement that "[t]he regular work week shall be FORTY (40) HOURS consisting of five consecutive eight hour days beginning on Monday and ending on Friday."[8] For several *495 reasons, however, this provision does not serve to support the decision under review.
1. First, and most significant, even an express statement in a collective bargaining agreement or other employment contract may not, as we have seen, be permitted to control the entitlement to benefits under the "regular rate" provision of the FLSA. That is a separate,[9] purely statutory question which is determined by what the parties do, not by what they say. See generally, Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). In Bay Ridge Operating Co. v. Aaron, supra, the Court stated, in no uncertain terms:
A vigorous argument is presented for petitioners by the International Longshoremens Association that a collectively obtained and administered agreement should be effective in determining the regular rate of pay but we think the words of and practices under the contract are the determinative factors in finding the regular rate for each individual.
As the regular rate of pay cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee, it must be drawn from what happens under the employment contract.[[10]]
334 U.S. at 463-64, 68 S.Ct. at 1196, 92 L.Ed. at 1516-17. Since "what happened" under this agreement conclusively shows the propriety of the employer's overtime payments, any contrary language in the agreement is essentially irrelevant.
2. Even acknowledging that the contract is to be given some weight in determining the "actual facts" of the regular rate, see Barrentine v. Arkansas-Best Freight System, Inc., supra; Bay Ridge Operating Co. v. Aaron, supra, the language upon which the plaintiffs rely is insufficient to support the result reached below. This is shown by an application of the most elementary principles of contract construction.
(a) It is apodictic that, in determining the intention of the parties, individual terms of a contract are not to be considered in isolation, but as a whole and in relation to one another, with specific language controlling the general. Hollerbach v. U.S., 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898 (1914); Bystra v. Federal Land Bank of Columbia, 82 Fla. 472, 90 So. 478 (1921); 4 Williston on Contracts § 618 (3rd ed. 1961). Viewed in this light, the forty-hour provision simply does not mean  or even say  what the court held it did. Indeed, it does not even speak to the real issue in the case  the "regular rate" of the drivers. Instead, it provides only that the "regular work week" is forty hours, and may thus properly be viewed as merely declaratory of and meaninglessly redundant to what the FLSA already provides insofar as overtime pay is concerned.[11] More important, two paragraphs later,[12] the parties directly addressed the "regular rate"-overtime question. Compare Mumbower v. Callicott, 526 F.2d 1183, 1188 (8th Cir.1975). They did so by providing, first, that it was to be governed by the "procedure outlined in ... Section 778.114"  the fluctuating hours standard which has already been quoted  and subsequently, see note 6, supra, by the *496 payment of "straight time" for overtime hours. Both methods are totally inconsistent with the position adopted below, that the parties agreed to pay the designated salary for a fixed forty-hour workweek, so that the "regular rate" was simply the salary divided by forty. Even on the face of the contract alone, there is therefore nothing to support that conclusion.
(b) The proper resolution of any inconsistency which may arguendo exist in this agreement, like any other, is best determined by the manner in which the parties actually perform under it. Brooklyn Life Ins. Co. of New York v. Dutcher, 95 U.S. 269, 24 L.Ed. 410 (1877); Lalow v. Codomo, 101 So.2d 390, 393 (Fla. 1958); 4 Williston, supra, § 623. As to this important factor, there is no doubt that everyone, without issue, dispute, or complaint, treated the agreement as one which called for the overtime specifically agreed to, not the one required by the ex post facto application of the "forty hour work week" clause.
(c) Finally, subsequent to the time frame involved here  during which there was one amendment to the overtime practice, see note 6, supra  the employer and union, after intensive collective bargaining, further changed the contract to a straight hourly rate. This resulted in the same consequences as to overtime pay which the trial court's decision would have applied to the previous period. It may be presumed, however, that an amendment to an agreement is designed to serve some useful function, and its existence is strong evidence, therefore, that the contract was changed from what the parties believed and intended was provided before. See Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457, 463 (1930); State ex rel. Triay v. Burr, 79 Fla. 290, 84 So. 61, 74 (1920).
The determination of the "regular rate" of pay is, as the Supreme Court has recently reiterated, a mixed question of law and fact. Barrentine v. Arkansas-Best Freight System, Inc., supra, 450 U.S. at 743, 101 S.Ct. at 1446, 67 L.Ed.2d at 655. For the reasons we have outlined, an application of the facts shown by the record to the controlling law demonstrates the incorrectness of the order below. See cases collected, 51B C.J.S. Labor Relations § 1310 (1968). It is therefore reversed and the cause remanded with directions to dismiss the complaint.[13]
Reversed.
NOTES
[1] Since the order, which referred the calculation of damages to a master, determined the issue of liability in favor of parties seeking affirmative relief, we have jurisdiction under Fla.R.App.P. 9.130(a)(3)(C)(iv).
[2] The appellant challenges the trial court's finding that it was subject to the FLSA. The basis of our decision permits us to assume without directly deciding the correctness of this conclusion. See, 29 U.S.C. § 203(s); Roland Electric Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1946); D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946); Wirtz v. Standard Container and Paper Co., 389 F.2d 134 (5th Cir.1967); Wirtz v. Soft Drinks of Shreveport, Inc., 336 F. Supp. 950 (W.D.La. 1971).
[3] See note 6, infra.
[4] The relevant provisions of the agreement between the appellant and the United Steelworkers local which represented the appellees are as follows:

ARTICLE VI
HOURS OF WORK AND OVERTIME
Section 1.
The regular work week shall be FORTY (40) HOURS consisting of five consecutive eight hour days beginning on Monday and ending on Friday. The regular starting time for employees covered hereunder shall be between 6:00 a.m. and 7:00 a.m. (with the exception of special events employees, whose regular starting time shall be 7:30 a.m.).
* * * * * *
Section 3.
Overtime shall be payable as follows:
Salaried pre-sell drivers shall receive, for all hours worked in excess of forty (40) in a given workweek, overtime pay in accordance with the procedure outlined in Interpretive Bulletin Section 778.114 of the Wage and Hour Administrator, entitled "Fixed Salary for Fluctuating Hours."
All other employees covered hereunder will be compensated as provided elsewhere in this Agreement.
The emphasized clause is the one relied upon by the appellees and the lower court.
[5] Soon after the beginning of the pertinent period, the union and Pepsi also agreed to pay a driver one-fifth of his weekly salary for each Saturday he reported. The number of hours worked on Saturday was, by agreement, not tallied or computed in determining the total workweek for overtime purposes, apparently because it was thought that the full day's allowance for these hours was more than sufficient to compensate for any time-and-a-half over 40 hours the Saturday time would have required. Although they so argued below, the appellees did not carry their required burden to show, whether by their own testimony, cf. Mitchell v. Mitchell Truck Line, Inc., 286 F.2d 721 (5th Cir.1961) or otherwise, that this was not the case and that they were therefore entitled to any additional compensation for Saturday work. Hodgson v. A.W. Crossley, Inc., 365 F. Supp. 1131 (S.D.N.Y. 1973). See also, 29 U.S.C. § 207(e)(6) (premium Saturday pay not included in "regular rate.")
[6] In 1978, the union and the employer agreed to pay "straight time," or 1/40 of the agreed weekly wage, for every hour over 40 worked during weekdays. In the $240.00 per week-48 hours example in the text, this resulted in the payment of $40.00 additional for overtime. While this was less than the amount the appellees argued was required under the 40-hour, fixed hours-fixed salary method the trial court found was appropriate, it was more than we find infra was required by the FLSA under the "actual facts."
[7] The illustrations contained in subsection (b) are exactly equivalent to what occurred at Pepsi-Cola during the pertinent time:

The application of the principles above stated may be illustrated by the case of an employee whose hours of work do not customarily follow a regular schedule but vary from week to week, whose overtime work is never in excess of 50 hours in a workweek, and whose salary of $80 a week is paid with the understanding that it constitutes his compensation, except for overtime premiums, for whatever hours are worked in the workweek. If during the course of 4 weeks this employee works 40, 44, 50, and 48 hours, his regular hourly rate of pay in each of these weeks is approximately $2, $1.82, $1.60, and $1.67, respectively. Since the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due. For the first week the employee is entitled to be paid $80; for the second week $83.64 ($80 plus 4 hours at 91 cents, or 40 hours at $1.82 plus 4 hours at $2.73); for the third week $88 ($80 plus 10 hours at 80 cents, or 40 hours at $1.60 plus 10 hours at $2.40); for the fourth week approximately $86.72 ($80 plus 8 hours at 84 cents, or 40 hours at $1.67 plus 8 hours at $2.51).
[8] See note 4, supra.
[9] The plaintiffs themselves have sub silentio recognized the distinctiveness of the issues. Although many of them are the union leaders who were active in negotiating the contract, they do not claim in this action  and in fact have never contended, by invoking its arbitration provisions or otherwise  that the appellant has not paid the wages required by the terms of the collective bargaining agreement itself.
[10] It is true that the "actual facts" test was applied in Aaron, as in most, if not all, other instances to increase the return to employees above the amount due under what was designated as the "regular rate" in the contract. We are unwilling to believe, however, that the doctrine is not a neutral principle which must be applied even though, as here, it may have the opposite effect.
[11] This view is strengthened by the fact that, soon after the contract was executed, it was agreed in a supplementary letter that, after the first six weeks, "the company will not schedule an employee to work a regular work week in excess of fifty (50) hours." [e.s.]
[12] See note 4, supra.
[13] We need not discuss the other issues presented by the appellant.