Dennis P. HARRIS, John A. Hamm, Eduardo Dominiques, Jr., Daniel M. Keeler, Kevin Buckley, William D. Mahoney, Individually and As Representatives of Other Similarly Situated Employees, Plaintiffs,

v.

CITY OF BOSTON, Defendant.

No. CIV.A.2002–10123–RBC [1].

United States District Court,
D. Massachusetts.

March 31, 2003.

---

**1.** With the parties' consent, on April 22, 2002, this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

John F. McMahon, Paul T. Hynes, Angoff, Goldman, Manning & Hynes, Boston, MA, for Dennis P. Harris, John A. Hamm, Eduardo Dominques, Jr., Daniel M. Keeler, Kevin Buckley, William D. Mahoney, Plaintiffs.

John C. Foskett, Robert E. Holland, Catherine S. Reidy, Deutsch, Williams, Brooks, DeRensis, Holland & Drachman, Boston, MA, for defendants.

*MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (# 32) AND DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CLAIMS IN AMENDED COMPLAINT, ¶¶ 14 AND 18(# 34)*

COLLINGS, United States Magistrate Judge.

### I. Introduction

Boston Police Detectives on the day shift are given a half-hour paid lunch break. The issue in this case is whether the half-hour lunch break should be considered as part of the "hours worked" by the detectives for purposes of calculating overtime under the Fair Labor Standards Act of 1928 ("FLSA"), 29 U.S.C. § 201 et seq.

### II. Proceedings to Date

In January of 2002, plaintiffs Dennis P. Harris, John A. Hamm, Eduardo Dom-

inques, Jr., Daniel Keeler, Kevin Buckley, and William D. Mahoney (hereinafter collectively "the plaintiffs"), representing a class of police employees with a rating of detective in the Boston Police Department ("BPD"), filed a two-count complaint (# 1) naming their employer, the City of Boston ("City"), as the defendant. The gist of the complaint was that the City was violating the FLSA by failing to pay overtime (Count I) and under-paying overtime (Count II). The City duly filed its answer to the complaint. (# 3)

On June 20, 2002, when their unopposed motion to amend (# 22) was granted, the plaintiffs' amended complaint (# 24) was filed. Counts I and II remained the same while Count III (claim for failure to pay overtime for strike and city detail work) and Count IV (claim for lack of an effective partial exemption and failure to maintain records) were added in the amended pleading.[2] Again the City timely filed its answer. (# 24)

The parties' joint motion for bifurcation (# 18) was allowed on June 25, 2002, thereby effectively dividing this litigation into liability (Stage I) and damages (Stage II) phases. At a conference that same date, the parties advised that they would be filing a stipulation resolving all the Stage I issues[3] save one, to wit, the lunch period compensation issue. The parties further reported that they planned to file a stipulation with respect to the facts underlying the sole remaining issue and thus frame the claim in paragraphs 14 and 18 of the amended complaint for brevis resolution on summary judgment.[4]

Just such a stipulation of facts on the lunch pay issue was submitted on July 25, 2002.(# 29) Shortly thereafter on August 19, 2002, the plaintiffs filed a motion for partial summary judgment together with a Local Rule 56.1 statement and a memorandum in support. (## 31,32, 33) One week later the City filed an opposition to the plaintiffs' motion. (# 35) Also on August 26, 2002, the defendant filed a cross-motion for partial summary judgment and a Local Rule 56.1 statement.[5] (## 34, 36)

On March 7, 2003, a conference was held to obtain the parties' views on a particular issue which had come to the fore. Specifically, the parties were asked if it was determined that the appropriate test to be employed was whether the lunch differential time was "predominantly for the benefit of the employer", did that inquiry present a question of law or fact? In other words, even though the parties had stipulated to the underlying facts, would not the Court have to engage in weighing the pertinent factors and decide the ultimate fact in order to resolve the issue? *See, e.g., Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 265 (5 Cir., 1998) (footnote omitted) ("Whether meal time is predominantly for the benefit of the employer is a question of fact that is ordinarily resolved by the trier of fact after hearing all of the evidence.") If it is a question of fact, of course, it is not amenable to disposition on

---

2. At various times over the course of this litigation the plaintiffs have moved, unopposed, to add parties plaintiff. These motions have been uniformly granted.

3. The parties' stipulation on Stage I was in fact filed on July 15, 2002.(# 28)

4. The parties have done an admirable job in collaborating to negotiate these stipulations. Their efforts are to be commended.

5. Given that the facts and legal issues in the two partial summary judgment motions are identical, the City relies on its memorandum in opposition to the plaintiffs' dispositive motion as support for its affirmative motion. See # 34.

summary judgment. Consequently, the parties were asked if they would agree to waive the jury claim on the issue and have the Court decide it on the stipulated record.

At the conference, defendant's counsel agreed to have the Court rule on the question either on summary judgment or as a non-jury trial. On March 14, 2003, the plaintiffs filed their response to the Court's query, indicating that they agreed to waive their jury trial claim on the lunch period compensation issue and agreed to have the Court decide any issues presented by the parties' stipulation. (# 37)

With the record complete, the motions for summary judgment stand ready for resolution. Indeed, the motions shall be decided as submitted, i.e., as summary judgment motions, with the understanding and agreement of the parties that, to the extent factual issues need to be decided, the Court may resolve them as if presented under Rule 52, Fed.R.Civ.P.

## II.  The Facts

It is undisputed that "[t]he named plaintiff representatives are members of the Boston Police Detectives Benevolent Society ('BPDBS'), . . . the exclusive bargaining representative for patrol officers and other ranks with Detective ratings employed by the City in the BPD ('Detectives' or 'Unit member')." (# 24  ¶ 7;  # 25  ¶ 7) The BPDBS and the City are parties to a collective bargaining agreement ('CBA') which delineates the terms and conditions of the members' employment with the BPD.[6]

According to the terms of the CBA, there are seven basic work shifts and three additional tours of duty for the detectives. (Parties' Joint Stipulation # 29 ¶ 1 [7], Exh. 1 at 15;  ¶ 2 [8], Exh. 2 at 9) Detectives assigned to the day tour of duty work an 8.5 hour shift, either 7:30 AM to 4:00 PM or 8:30 AM to 5:00 PM. (# 29 ¶ 1, Exh. 1 at 15;  ¶ 2, Exh. 2 at 9) Detectives assigned to the other tours of duty have shifts of 7.75 hours (in three instances), 7.5 hours (in three instances), 8.1 hours (in one instance), and 8.0 hours (in one instance). (# 29 ¶ 1, Exh. 1 at 15;  ¶ 2, Exh. 2 at 9) In pertinent part the CBA provides that:

> (ii) All day shifts or tours shall include a half-hour paid lunch period for all bar-

**6.**  As explained by the City: "There are two groups of plaintiffs, consisting of those who are detectives and those who are detectives holding the ranks of sergeant and above (detective superiors). Each group is covered by a separate collective bargaining agreement with the City, the pertinent provisions of which are largely identical." (# 35 footnote 1) References to the CBA encompasses both collective bargaining agreements.

**7.**  Paragraph 1 of the parties' stipulation reads as follows:
> Attached as Exhibit 1 is a copy of what the parties stipulate for purposes of this lawsuit is the substance of Article IX of the collective bargaining agreement between the defendant City of Boston and the Boston Police Detectives' Benevolent Society, which is the authorized bargaining representative for those plaintiffs who hold ranks below that of sergeant.  Article IX, section

1A(ii) establishes the lunch period compensation which is the subject of those plaintiffs' claim.

Parties' Joint Stipulation # 29 ¶ 1.

**8.**  Paragraph 2 of the parties' stipulation reads as follows:
> Attached as Exhibit 2 is a copy of what the parties stipulate for purposes of this lawsuit is the substance of Article VII of the collective bargaining agreement between the defendant City of Boston and the Boston Police Detectives' Benevolent Society (Superior Officers' Unit), which is the authorized bargaining representatives for those plaintiffs who hold the ranks of sergeant and above.  Article VII, section 1A establishes the lunch period compensation which is the subject of those plaintiffs' claim.

Parties' Joint Stipulation # 29 ¶ 2.

gaining unit employees. During their paid lunch period, officers will remain on call in accordance with the existing "Code 10" directive.

Compensation for each half-hour lunch period shall be calculated at a straight time rate [ (regular weekly compensation 40) × .5] except when a lunch period occurs during an overtime shift or tour in which case the overtime rate will apply.

Such compensation shall be included in the employee's regular weekly pay for the purposes of computing sick pay, injured pay, holiday pay, and vacation pay and shall be considered regular compensation for pension and retirement purposes to the extent permitted by law. Parties' Joint Stipulation # 29 ¶ 1, Exh. 1 at 16–17; ¶ 2, Exh. 2 at 10.

It is these provisions regarding lunch hours that are the crux of the dispute between the parties.

For contextual purposes, the facts need to be more fully limned. The Code 10 directive referenced in the CBA details the procedures to be followed by day officers when taking lunch periods. (# 29 ¶ 3 [9], Exh. 3) Pursuant to the directive, officers are afforded "reasonable time (not to exceed thirty minutes) for lunch provided that they notify the dispatcher where the lunch period will be spent." (# 29, Exh. 3) Additional time constraints imposed by the directive include: Taking a lunch break during the 7:30 AM to 9:30 AM time period is prohibited; officers must work for at least an hour in their shift prior to taking

a lunch period; and no lunch period is permitted during the last hour of a tour of duty unless an earlier lunch break had been denied due to an emergency or prior assignment. (# 29, Exh. 3)

The terms of the Code 10 directive allow both officers in a patrol vehicle to take a lunch break at the same time so long as they have a walkie-talkie unit and "remain available to receive emergency radio calls at all times." (# 29, Exh. 3) However, if a patrol vehicle on "rare occasion" does not have a walkie-talkie assigned to it, the officers must take separate lunch periods with one officer remaining in the patrol vehicle while the other officer eats. (# 29, Exh. 3) Lastly, the directive advises that absent an emergency, the officers' lunch period is not to be interrupted. (# 29, Exh. 3)

In 1985 the "Procedure for use of Code 10 (Lunch Period)" was reissued. (# 29 ¶ 4 [10] and Exh. 4) According to this directive Code 10s are not to be permitted between 4:00 PM and 6:00 PM, all lunch periods are to be completed before 10:00 PM, and no lunch breaks are to be taken within the last hour of a tour of duty. (# 29, Exh. 4) The procedure also mandates that during lunch periods, "units are to remain in contact with the Operations Division at all times", that "[o]ccasionally, units will be removed from their Code 10 for calls requiring police intervention," and finally, that "Code 10's may be suspended temporarily by order of Area/Unit Patrol Supervisor(s), consistent with needs of the

---

9. In relevant part, paragraph 3 of the parties' stipulation reads: "Attached as Exhibit 3 is a copy of the ' "Code 10" directive dated September 18, 1979' referred to in Exhibit 1, Article IX, section 1a(ii). For purposes of this lawsuit, the parties stipulate that the ' "Code 10" directive dated January 7, 1980' referred to in Exhibit 2, Article VII, section 1A, is identical in content to Exhibit 3." (# 29 ¶ 3)

10. Paragraph 4 of the parties' stipulation reads: "Attached as Exhibit 4 is a copy of a May 23, 1985 reissuance of the Boston Police Department's 1984 'Procedure for Use of Code 10.' " (# 29 ¶ 4)

Department," such as during parades or emergency situations. (# 29, Exh. 4) It was underscored that the "dispatcher controls these assignments." (# 29, Exh. 4)

The parties have stipulated to the following facts:

> Plaintiffs assigned to the day shift and entitled to the "Code 10" half hour paid lunch period must notify the Police Department Dispatcher when they are requesting the lunch period and the location where it will be spent. Plaintiffs are required to remain "on call" by radio to respond to emergencies during the lunch period. It is rare that a plaintiff on a "Code 10" lunch period is required to terminate it to respond to an emergency. It is also rare that a plaintiff who requests a "Code 10" lunch period is denied that request due to an emergency. In an instance where such a request is denied due to an emergency, a plaintiff is normally allowed to make up the lunch period later in the shift; however, there are occasions where emergencies do not permit a "Code 10" to be taken.

Parties' Joint Stipulation # 29. ¶ 5.

As defined in the CBA, overtime service is:

> all assigned, authorized or approved service outside or out of turn of an employee's regular scheduled tour of duty (other than paying police details), including service on an employee's scheduled day off, or during his vacation, and service performed prior to the scheduled starting time for his regular tour of duty, and service performed subsequent to the scheduled time for conclusion of his regular tour of duty, including court time as set forth in Article X . . .

Parties' Joint Stipulation # 29 ¶ 1, Exh. 1 at 18.

The CBA further provides when a detective performs overtime service as defined in the Agreement, he or she shall be paid "time-and-one-half straight time hourly rate for each hour of overtime service." (# 29 ¶ 1, Exh. 1 at 20)

### III. Discussion

▮▮▮ The FLSA "establishe[s] a comprehensive remedial scheme requiring a minimum wage and limiting the maximum number of hours worked, absent payment of an overtime wage for all hours worked in excess of the specified maximum number." *Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145, 1149 (10 Cir., 1992). Section 207(a) of the FLSA is the provision which mandates the payment of an overtime wage:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Title 29 U.S.C. § 207(a)(1) (emphasis added).

The statute further provides, inter alia, that "[a]s used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee . . ." Title 29 U.S.C. § 207(e).

▮▮▮ The Code of Federal Regulations ("C.F.R.") issued by the Department of Labor and adopted pursuant to the FLSA, constitutes "a body of experience and in-

formed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Although not controlling, these regulations can properly be regarded by the courts as "persuasive authority." *Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 65 (2 Cir., 1997). Of particular import in the present case is a regulation that directly addresses the issue raised by the cross-motions:

> In some cases an agreement provides for compensation for hours spent in certain types of activities which would not be regarded as working time under the Act if no compensation were provided. Preliminary and postliminary activities and time spent in eating meals between working hours fall in this category. The agreement of the parties to provide compensation for such hours may or may not convert them into hours worked, depending on whether or not it appears from all the pertinent facts that the parties have agreed to treat such time as hours worked.

29 C.F.R. § 778.320.

Since payment for "...time spent in eating meals" would not be "regarded as working time under the Act" if the time were not compensated, such time would not be included in the definition of "regular rate" as found in 29 U.S.C. 207(e). However, if such time is compensated, it may be considered as hours worked for purposes of establishing the regular rate if the "parties have agreed to treat such time as hours worked." The point is explicitly made in subsection (b) of the regulation which provides in pertinent part:

> On the other hand, in the case of time spent in activity which would not be hours worked under the Act if not compensated and would not become hours worked under the Portal–to–Portal Act even if made compensable by contract, custom, or practice, the parties may reasonably agree that the time will not be counted as hours worked. Activities of this type include eating meals between working hours. Where it appears from all the pertinent facts that the parties have agreed to exclude such activities from hours worked, payments for such time will be regarded as qualifying for exclusion from the regular rate under the provisions of section 7(e)(2), as explained in §§ 778.216 to 778.224. The payments for such hours cannot, of course, qualify as overtime premiums creditable toward overtime compensation under section 7(h) of the Act.

29 C.F.R. § 778.320(b).

The next question is, in the absence of any agreement, how is it to be determined whether the time spent eating lunch, when compensation is provided for the time, is or is not included in the "hours worked"? Plaintiffs seem to argue that if the lunch break is compensated, then the time is included in the "hours worked" merely because compensation is given. This is not the law.

Next, plaintiffs contend that the Court should apply the "completely relieved from duty" test culled from 29 C.F.R. § 785.19(a) to determine whether lunch periods are hours worked. In relevant part this regulation reads:

(a) *Bona fide meal periods.* Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform

any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

29 C.F.R. § 785.19(a).

*See, e.g., Kohlheim v. Glynn County, Ga.,* 915 F.2d 1473, 1477 (11 Cir., 1990) ("Thus, the essential consideration in determining whether a meal period is a bona fide meal period or a compensable rest period is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal...The firefighters are subject to real limitations on their freedom during mealtime which inure to the benefit of the county; accordingly, the three mealtime periods are compensable under FLSA regulations for overtime purposes.") Despite the Eleventh Circuit's ruling in the Kohlheim case, the plaintiffs forthrightly acknowledge that this test has not been applied by the majority of the Circuits in meal period cases.

The majority of Circuits follow law set forth by the Supreme Court in the years following the enactment of the FLSA in which the Supreme Court addressed the Act's definition of work. In *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944), work was defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his businesses." *Tennessee Coal,* 321 U.S.

590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944). In two companion cases, the Court "reiterated that lower courts should adopt a practical approach based on the realities of each case in determining whether employees were spending certain periods of time predominantly for the benefit of the employer or for their own benefit." *Henson v. Pulaski County Sheriff Dept.,* 6 F.3d 531, 533 (8 Cir., 1993) (citing *Armour & Co. v. Wantock,* 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944); *Skidmore,* 323 U.S. at 136-37, 65 S.Ct. 161).

Despite the Supreme Court's firmly established definition of "work", the Wage and Hour Division of the Department of Labor issued the regulation codified at 29 C.F.R. § 785.19(a)[11] incorporating the "completely relieved from duty" language. As noted earlier, the plaintiffs cite the Eleventh Circuit decision in Kohlheim as authority for adopting the mealtime exclusion standards of § 785.19. See *Kohlheim,* 915 F.2d at 1477. The Eleventh Circuit, in turn, had relied on cases from three other Circuits, the Fourth, Eighth, and Ninth, in which the "completely relieved from duty" standard had been accepted as the appropriate one to be applied. *See Donovan v. Bel-Loc Diner, Inc.,* 780 F.2d 1113, 1115 (4 Cir., 1985); *Mumbower v. Callicott,* 526 F.2d 1183, 1188 (8 Cir., 1975); *Brennan v. Elmer's Disposal Ser., Inc.,* 510 F.2d 84, 88 (9 Cir., 1975).

Subsequent to the Kohlheim decision, however, the Fourth and Eight Circuits have adopted the "predominantly for the benefit of the employer" standard. *See*

11. According to 29 C.F.R. § 553.223(a), "if a public agency elects to pay overtime compensation ... to law enforcement personnel in accordance with section 7(a)(1) of the Act, the public agency may exclude meal time from hours worked if all the tests in § 785.19(a) are met." This is the regulation which applies to the facts of this case. A different regulation, 29 C.F.R. § 553.223(b), applies specifically to law enforcement personnel covered by a section 7(k) exemption. However, "[t]he parties have stipulated for purposes of the FLSA only that as of the dates at issue in the amended complaint the City of Boston has not effectively adopted a partial public safety exemption as set forth in 29 U.S.C. 207(k)." (# 31 ¶ 10, # 36) This stipulation renders the latter regulation inapplicable in this matter.

*Roy v. County of Lexington, South Carolina*, 141 F.3d 533, 545 (4 Cir., 1998) [12] ("the most appropriate standard for compensability is a 'flexible and realistic' one where we determine whether, on balance, employees use mealtime for their own, or for their employer's benefit."); *Henson*, 6 F.3d at 533.

Although a question of first impression in this Circuit, the majority of the Circuits that have had occasion to address the issue have rejected the "completely relieved from duty" test in favor of the "predominantly for the benefit of the employer" test when determining whether meal periods are considered "hours worked." Using this test, meal periods are considered "work" only when an employee predominantly spends the time performing activities for the employer's benefit. *See Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 265 n. 16 (5 Cir., 1998) ("Today, we adopt the 'predominant benefit' test used by most circuit courts."); *Barefield v. Village of Winnetka*, 81 F.3d 704, 710 (7 Cir., 1996) ("This court has adopted the predominant benefits test for determining whether meal periods are work periods. Under this test, a meal period is not work time if 'the employee's time is not spent predominantly for the benefit of the employer.'") (quoting *Alexander v. City of Chicago*, 994 F.2d 333, 337 (7 Cir., 1993)); *Henson*, 6 F.3d at 534 ("We conclude that the predominantly for the benefit of the employer standard provides the appropriate test for determining the compensability of meal periods under the FLSA."); *Hill v. U.S.*, 751 F.2d 810, 813 (6 Cir., 1984) (" 'Time spent predominantly for the employer's benefit during a period, al-though designated as a lunch period or under any other designation, nevertheless constitutes working time compensable under the provisions of the [FLSA].' ") (quoting *F.W. Stock & Sons v. Thompson*, 194 F.2d 493, 496–97 (6 Cir., 1952)). The reasoning of these courts is persuasive, and it is the Court's view that, if faced with the question, the First Circuit would adopt the "predominantly for the benefit of the employer" test. Accordingly, that is the test that shall be applied in the instant case.

■ Courts applying the "predominantly for the benefit of the employer" test undertake a factual inquiry to determine whether the restrictions imposed on the employee during the meal period are predominantly for the employer's benefit. *See Bernard*, 154 F.3d at 265. In such an analysis,

> The courts focus on various factors, such as 'the limitations and restrictions placed upon the employees, the extent to which those restrictions benefit the employer, the duties for which the employee is held responsible during the meal period, and the frequency in which meal periods are interrupted.'

*Bernard*, 154 F.3d at 266.

Thus, in circumstances where employees were required to wear their radios and tools during lunch, remain on the premises during their breaks, and respond immediately to maintenance problems that frequently arose during their lunch periods, it was concluded that the meal periods were predominantly for the benefit of the employer. *Bernard*, 154 F.3d at 265. See also *Reich*, 121 F.3d at 65–66 (Employees

**12.** Clarifying its earlier decision in Donovan that employed the "completely relieved from duty" standard, the Fourth Circuit stated, "Donovan ... [does not] focus on the correct standard, but rather they simply restate the regulatory language. To adopt such a broad interpretation of the regulation would virtually eliminate the entire exemption and would, of course, be contrary to [the Supreme Court's decisions in] Armour and Stock." *Roy*, 141 F.3d at 545 n. 5.

were required to remain on the job site during their lunch breaks for the "purpose of providing important ... security, maintenance and safety services.") On the other hand, where the employees' only restriction was that they remain "on-call" during their lunch breaks, this was not viewed as time spent predominantly for the employer's benefit. See *Barefield*, 81 F.3d at 707 ("[The] officers' only restriction during their meal period was they had to remain in the police department building or in radio contact with the building."); *Henson*, 6 F.3d at 536 ("The only potential restrictions on the officers' use of their meal periods for their own purposes arise from the possibility that citizens might ask them questions and from the monitoring of their radios for emergency calls to return to service."); *Roy*, 141 F.3d at 546 (employees were free to leave their worksite during meal periods and only 27% of the total number of meal periods occurring in 14 separate shifts were interrupted by emergency calls).

Applying the "predominantly for the benefit of the employer" test to the facts of this case, it cannot be said that the plaintiffs' Code 10 lunch periods should be considered "hours worked" under the FLSA. The restrictions imposed do not prevent them from "comfortably and adequately passing the mealtime." *Avery v. City of Talladega, Alabama*, 24 F.3d 1337, 1346 (11 Cir., 1994).[13] Under the CBA the detectives must remain on call in accordance with the Code 10 directive. This directive places certain restrictions on the timing of lunch breaks, but that does not transform the Code 10 periods into working hours. Only on "rare occasions" when a patrol vehicle does not have a walkie-talkie assigned to it does one officer have to remain in the patrol vehicle while the other one eats. An officer may have to terminate his lunch period altogether if an emergency arises, but this happens very rarely. It is also rare that an officer who requests a Code 10 lunch period is denied that request because of an emergency. In short, the restrictions imposed on the detectives during their Code 10 lunch periods are quite circumscribed.[14]

■ Having concluded that the day shift lunch periods are not "hours worked" under the FLSA, the Court must return to the question of "whether or not it appears from all the pertinent facts that the parties have agreed to treat [the Code 10] as hours worked." 29 C.F.R. § 778.321. Although the lunch period payment is considered remuneration for employment or regular compensation under the CBA, there is no explicit agreement to treat this time as working hours.

The Supreme Court has construed "regular rate" to mean "the hourly rate actually paid for the normal, non-overtime workweek. The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the work week." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461, 68

---

**13.** The Court distinguished its earlier decision in Kohlheim, which applied a "completely removed from duty" standard when interpreting § 785.19(a), since it did not involve law enforcement officers. See *Avery*, 24 F.3d at 1346. Even though the Court was construing the regulatory intent governing § 7(k) law enforcement officers, it still recognized that a higher level of duty is required before meal breaks are compensable for officers than for other types of employees. See *Avery*, 24 F.3d at 1345.

**14.** If a detective, because of an emergency, was not able to take the lunch period when he sought to, and the detective was not provided another opportunity during the shift to take a lunch break, the Court assumes that the City would treat the thirty minutes which would have been the lunch break as "hours worked."

S.Ct. 1186, 92 L.Ed. 1502 (1948). The plaintiffs contend that the payments for the lunch periods are "agreed remuneration for employment" and that since the payment "shall be included in the employee's regular weekly pay for the purposes of computing ... injured pay ..., and shall be considered regular compensation for pension and retirement purposes," then this is a recognition and acknowledgment that the lunch period payments are "remuneration geared to work or services performed."

The fatal flaw in this argument is that the plaintiffs apparently fail to recognize that agreed upon compensation for lunch periods may be excluded from the "regular rate" absent an agreement that the Code 10 lunch periods are "hours worked." As the defendant correctly points out, 29 C.F.R. § 778.320 "assumes that a payment for the lunch period necessarily is always 'compensation.'" The analysis turns on whether the parties explicitly acknowledged in the CBA that the plaintiffs were being compensated for "hours worked," not whether the lunch payment is compensation. In other words, the issue is whether the compensation is going to be excluded from the "regular rate" for purposes of calculating overtime compensation. Looking at all the facts and circumstances, it must be concluded that the parties did not intend for the lunch period to be considered "hours worked." Under the CBA, a detective is entitled to receive overtime pay for service performed "prior to the scheduled starting time" and "subsequent to the scheduled time for conclusion of his regular tour of duty." (# 29 ¶ 1, Exh. 1 at 18; ¶ 2, Exh. 2 at 11–12) Thus, officers working other than the day shift are entitled to overtime for service performed after completing their shifts of 7.75 hours, 7.5 hours, or 8.1 hours respectively. The day shift detectives, on the other hand, are entitled to overtime only after completing a shift of 8.5 hours. The defendant's argument is on point:

> if the one-half hour paid lunch period was considered 'work' by the parties, the day shift plaintiffs should receive overtime commencing upon the completion of the number of hours which triggers overtime for the other shifts, who do not receive the paid lunch period (which is paid at straight time). Otherwise, the day shift plaintiffs have to perform substantially more 'work' to earn the same right.

Defendant's Opposition # 35 at 14.

It seems certain that the parties could not have intended such a result.

In sum, the reasonable inference to be gleaned from the terms of the CBA is that the parties did not intend to consider Code 10 payments for day shift officers to be treated as "hours worked" under the FSLA.

### IV. Conclusion and Order

For the reasons stated, I conclude that the proper legal standard to apply is whether the half-hour lunch period is predominantly for the benefit of the employer. I find that, in the instant case, it is not. I further find that there is no agreement between the parties that the lunch period is to be considered "hours worked." Consequently, it is ORDERED that the Plaintiffs' Motion for Partial Summary Judgment (# 32) be, and the same hereby is, DENIED. It is FURTHER ORDERED that the Defendant's Cross–Motion For Partial Summary Judgment As To Claims In Amended Complaint, ¶¶ 14 And 18(# 34) be, and the same hereby is, ALLOWED to the extent that the Court, as part of the judgment to be entered at the conclusion of the litigation, will enter judgment for the defendant on the claims con-

tained in paragraphs 14 and 18 of the Amended Complaint.