DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STUART N. BORNSTEIN,** an individual, and **GRANADA, LLC,** a Florida
Limited Liability Company,
Appellants,

v.

**IRA MARCUS,** an individual, and **IRA MARCUS P.A.,**
a Florida Corporation,
Appellees.

No. 4D18-277

[May 8, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit,
Broward County; Carlos A. Rodriguez, Judge; L.T. Case No. 10-046657
(14).

Xavier A. Franco, George E. McArdle and Michael A. Mullavey of
McArdle, Pérez & Franco P.L., Coral Gables, and John P. Seiler of Seiler
Sautter Zaden Rimes & Wahlbrink, Fort Lauderdale, for appellants.

Robert M. Klein, Mark J. Sullivan and Andrew M. Feldman of Klein
Glasser Park & Lowe, P.L., Miami, for appellees.

METZGER, ELIZABETH A., Associate Judge.

Appellants, Granada, LLC and Stuart Bornstein, appeal the trial court's
final judgment entered in favor of appellees, Ira Marcus and Ira Marcus,
P.A., following a bench trial. We affirm the final judgment and write solely
to address the court's conclusions regarding appellants' breach of contract
claims.

As set forth in our previous opinion concerning this case:

> In 2009, appellant Stuart Bornstein, Alan Potamkin, and their
> company Granada, LLC, entered into a retainer and
> contingent fee agreement with appellee Ira Marcus, P.A., for
> legal representation with a claim against the City of Coral
> Gables. Pursuant to the fee agreement, the firm would be
> entitled to 40% of the gross recovery. Additionally, the firm

was to be paid two retainers totaling $50,000 . . . [which] would be applied as a **credit** against any recovery.

*Bornstein v. Marcus*, 169 So. 3d 1239, 1241 (Fla. 4th DCA 2015) (emphasis added).

The retainer and contingency fee agreement ("Fee Agreement") included the following hypothetical, which showed how the $50,000 retainer credit would affect Ira Marcus, P.A.'s (the "firm") take-home fee amount if there was a recovery from the City of Coral Gables:

| | |
|---|---|
| Ex: Gross recovery: | $1,000,000.00 |
| Less Fees (40%) | $400,000.00 |
| | $600,000.00 |
| Credit client | +$50,000.00 |
| Net Attorneys Fees | $350,000.00 |
| Adjusted Gross to client | $650,000.00 |
| Less Outstanding costs: | -$  3000.00 |
| Net to Client: | $647,000.00 |

In 2007, Granada, LLC sued the City of Coral Gables. Ultimately, the City offered to settle Granada, LLC's claims for $1.45 million. Per the Fee Agreement, the firm was entitled to retain $530,000 of the settlement proceeds (after accounting for the $50,000 retainer credit). To assist appellants in reaching a settlement agreement with the City, the firm agreed to reduce its attorney's fees. To that end, the firm sent Mr. Bornstein, among others, a distribution sheet, which outlined how the $1.45 million settlement from the City would be divided ("Distribution Agreement"). The Distribution Agreement specifically noted, among other things, that Granada, LLC would "net" $880,816.01 and the firm would retain $450,000 in "Adjusted Attorneys Fees".

Appellant Bornstein signed the Distribution Agreement both as principal of Granada, LLC and in his individual capacity. In doing so, Bornstein acknowledged he "[r]eviewed, accepted and agreed to" the Distribution Agreement. Thereafter, Granada, LLC accepted the City's $1.45 million settlement offer. The firm distributed the settlement proceeds exactly as outlined in the Distribution Agreement.

It is undisputed Granada, LLC netted $880,816.01 of the settlement proceeds received from the City per the terms of the Distribution

Agreement. Despite this, Bornstein complained the settlement distribution was incorrect. Specifically, Bornstein asserted the firm was contractually obligated to refund appellants the $50,000 retainer initially addressed in the Fee Agreement. Appellee Marcus and the firm disagreed, maintaining the Distribution Agreement controlled, noting it clearly set forth the firm's entitlement to retain a flat $450,000 in attorney's fees.

The parties were unable to work out their differences regarding the $50,000 retainer paid to the firm. As a result, appellants filed a complaint against appellees for breach of contract, breach of fiduciary duty, conversion, and civil theft. The case proceeded to a non-jury trial. Both sides presented evidence regarding the events leading up to Granada, LLC's settlement with the City, the Fee Agreement, and the creation of the Distribution Agreement. Mr. Potamkin, a nonparty, and Bornstein testified, claiming the $50,000 "retainer credit" noted within the Fee Agreement was owed by the firm to appellants as a refund. At the same time, both Potamkin and Bornstein admitted the $50,000 retainer was "nonrefundable" under the terms of the Fee Agreement.

Marcus testified that the parties agreed his firm would net $450,000 from the City settlement proceeds as a fee *after* consideration of the retainer. Marcus also testified that all of the parties intended for the Distribution Agreement to supersede the contingency fee and retainer credit portions of the Fee Agreement. Marcus conceded the parties intended for the remainder of the Fee Agreement to remain intact.

At the conclusion of the trial, the court entered final judgment in favor of appellees. With respect to the breach of contract claims, the court found there was no breach as the Distribution Agreement created a new flat fee agreement, via novation, which unambiguously provided that the firm was entitled to retain $450,000 for attorney's fees from the settlement proceeds.

Appellants argue that the Distribution Agreement did not qualify as a novation based on the parties' lack of intent to completely replace the Fee Agreement and, therefore, the court's ruling on the breach of contract claim was erroneous. At best, appellants argue that the evidence at trial established the Distribution Agreement constituted a modification of the Fee Agreement which left the $50,000 retainer credit provision intact.

We first consider whether the Distribution Agreement constituted a novation. "A novation is a mutual agreement between the parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation . . . ." *Miami Nat'l Bank v. Forecast*

3

*Constr. Corp.*, 366 So. 2d 1202, 1204 (Fla. 3d DCA 1979). Under Florida law, four elements are required to effectuate the novation of a binding contract: "(1) the existence of a previously valid contract; (2) the agreement to make a new contract; (3) the intent to extinguish the original contractual obligation; and (4) the validity of the new contract." *S.N.W. Corp. v. Hauser*, 461 So. 2d 188, 189 (Fla. 4th DCA 1984).

In contrast, a modification merely replaces some terms of a valid and existing agreement while keeping those not abrogated by the modification in effect. *See Franz Tractor Co. v. J.I. Case Co.*, 566 So. 2d 524, 526 (Fla. 2d DCA 1990). "It is well established that the parties to a contract can discharge or modify the contract, however made or evidenced, through a subsequent agreement." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381–82 (Fla. 2004). This includes contracts for attorney's fees. *Lugassy v. Indep. Fire Ins. Co.*, 636 So. 2d 1332, 1335 (Fla. 1994).

Here, although the court's novation finding is entitled to great deference, we are compelled to disagree with such finding as all parties testified that the Distribution Agreement was meant to modify, not completely replace, the Fee Agreement. The question then becomes whether the trial court reached the right result on appellants' breach of contract claims, but for the wrong reasons. *See Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644–45 (Fla. 1999). We answer that question in the affirmative because the record evidence shows the parties intended to modify the contingency fee and retainer credit provisions together.

When determining the scope of a modification to a contract, the following principles control: (1) "individual terms of a contract are not to be considered in isolation, but as a whole and in relation to one another"; (2) "the proper resolution of any inconsistency . . . is best determined by the manner in which the parties actually perform under it"; and (3) "an amendment to an agreement is designed to serve some useful function, and its existence is strong evidence, therefore, that the contract was changed from what the parties believed and intended was provided before." *S. Fla. Beverage Corp. v. Figueredo*, 409 So. 2d 490, 495–96 (Fla. 3d DCA 1981). "When it is clear from the language or overall scheme or plan of a contract that the parties intended for various provisions to operate independently of each other, the court must enforce the contract as written." *Moore v. State Farm Mut. Auto. Ins. Co.*, 916 So. 2d 871, 875 (Fla. 2d DCA 2005).

In the instant case, the contingency fee provision, read in conjunction with the retainer fee credit provision of the Fee Agreement, served as an

4

initial rubric for determining the net compensation the firm would be entitled to be paid from the litigation proceeds. In turn, the subsequent Distribution Agreement specifically removed any reference to use of a contingency fee or application of a retainer credit and clearly delineated that the firm was entitled to net $450,000 from the litigation proceeds. The parties' performance affirms that the Distribution Agreement governed the firm's total fee compensation. The Distribution Agreement clearly and unambiguously modified both the contingency fee and retainer credit provisions of the Fee Agreement.

Accordingly, even though the trial court found the Distribution Agreement constituted a novation versus a modification of the Fee Agreement, we find, pursuant to the tipsy coachman doctrine, that the court did not err when it concluded appellees did not breach the contract entered into with appellants regarding attorney's fees. *See Dade Cty. Sch. Bd.*, 731 So. 2d at 644–45.

*Affirmed.*

GERBER, C.J., and CONNER, J., concur.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**